## THE CONSOCIATED PRESBYTERIAN SOCIETY OF GREEN'S FARMS *vs.* STAPLES AND OTHERS.

The practice of courts of chancery in this state, in relation to bills of interpleader, differs in some respects, from that of England, and of many of the other United States.

The plaintiffs brought their bill of interpleader, alleging that there was due from them upon a contract, an unpaid balance, which was severally claimed by the defendants,—but admitted no definite sum to be so due, and prayed the court to settle the amount of their said indebtedness. The court found the allegations of the bill to be true, authorized the plaintiffs to retain their costs, ordered the defendants to interplead, and afterwards referred the bill and answers to a committee. On the hearing, the plaintiffs admitted that the amount due from them was greater than all the claims established by the defendants, except the claim of F, over which such other claimants were entitled to a priority of payment, and no exception to the bill was taken by any of the defendants, until after the hearing before the committee was closed. Held, 1. That the bill ought not to be dismissed, and such prior claimants put to the expense of further unnecessary litigation, but that they should be paid from the funds in the hands of the plaintiffs. 2. That F might prosecute his claim against the plaintiffs by an action at law.

A contractor for the erection of a meeting-house for an ecclesiastical society, applied for labor and materials to C, D, and E, who had previously subscribed certain sums towards the cost of said house, and agreed that the

# JUNE TERM, 1855. `545

The Consociated Presbyterian So. of Green's Farms *v.* Staples and others.

society'might pay them therefor, by applying the amount of their subscriptions thereto, and in case the amount so furnished should exceed their subscriptions, such excess should be paid in cash by the society, which cash, and subscriptions cancelled, were to be charged by the society, to such contractor, as payment upon said contract. This agreement was made known to the society, and assented to in their behalf, by their building committee, in the exercise of the powers given them by the society, and relying on the same, C, D and E furnished labor and materials accordingly. Held, 1. That such agreement was not void, as to the society, on the ground that the building committee had no power to assent to it, on their behalf. 2. That it was not a promise to pay the debt of another, and therefore, not within the statute *of frauds.* 3. *That it was not void for the want of consideration.*

The provisions of the statute in force in 1852, "securing to mechanics a lien on land and buildings," do not extend to a sub-contractor, who has performed services, or furnished materials in the construction of a building, on the credit of the original contractor, without the assent of the proprietor to the sub-contract.

THIS was a bill of interpleader, brought by the Consociated Presbyterian Society of Green's Farms, against Staples & Adams, William S. Edgerton, Elnathan Wheeler, Henry B. Lockwood, Charles W. Hall, Daniel Burr, Hezekiah Lockwood, John Goodsell, John S. Hyde, Talcott R. Wakeman, Henry R. Wakeman, and Joseph B. French, who was the assignee of Hawley & Wheeler, praying the court to determine the amount then due from the plaintiffs, on a contract made with said Hawley & Wheeler, for the erection of a meeting-house, and also to order the defendants, severally, to set forth what right they had to the balance due on said contract, so that the plaintiffs might safely pay the same, and stating that they were ready, and willing, to pay said balance, when determined as aforesaid.

The bill was dated March 22d, 1853.

The cause first came before the court, at the April term, 1853, when the court found the allegations therein to be true, and ordered and decreed that the plaintiffs should retain, in their hands, the costs and charges of said petition, and that the defendants respectively, should interplead, answer, and set forth their claims to said fund or moneys, in the hands of

the plaintiffs. Thereupon, the defendants, respectively, filed their answers as follows:

Talcott B. Wakeman alleged in his answer, that, previous to the contract of said Hawley & Wheeler, in said bill referred to, he subscribed to aid in erecting said church, the sum of two hundred and seventy-five dollars; and said Henry B. Wakeman, the sum of two hundred dollars; that said Hawley & Wheeler, afterward, and while erecting said building, applied to them to furnish labor and materials for the same. Said Hawley & Wheeler agreed with them, that said society might pay them, by applying the sum to whatever balance might be due on said subscriptions, and the balance in cash, and charge the amount to said Hawley & Wheeler, on said contract; that this arrangement was made known to the plaintiffs, and they assented to the same ; that the amount due to them for said labor and materials, on the ———— day of ————, was $135.

Elnathan Wheeler alleged in his answer, that, on the 26th day of February, 1853, said Hawley & Wheeler were indebted to him, in the sum of forty-three dollars and sixty-nine cents, for work done in and upon, and materials furnished for the construction of, the church of said society, by said Hawley & Wheeler; that, by force of the statute in such case provided, they were entitled to a lien upon said church, for the security of said sum; that on said 26th of February, 1853, he executed a certificate, pursuant to said statute, setting forth said indebtedness, which certificate was duly executed and recorded.

William S. Edgerton alleged, in his answer, that he had a claim for materials furnished, and services rendered, for said church edifice, amounting to the sum of $174.51, and in conformity with the provisions of the statute, in such case made and provided, he lodged with the town-clerk of said town of Westport, a certificate of lien thereon, in accordance with the provisions of the statute, for said sum.

John S. Hyde alleged, that, previous to the contract of said

Hawley & Wheeler, in the bill referred to, he and his sister, Eleanor Hyde, subscribed, in aid of the erection of the church, or meeting-house, two hundred and fifty dollars, all of which was paid by them, except the sum of fifty dollars; that said Hawley & Wheeler applied to him to furnish labor and materials for said church, and agreed that said society might pay him for said services and materials, by canceling said subscription, and paying the balance in cash, and charge the same to said Hawley & Wheeler, on their contract for erecting said church; that said arrangement was made known to said society, and they assented to the same; that, relying upon said arrangement, he did furnish materials and services, amounting on the first day of December, 1852, to one hundred dollars.

Daniel Burr alleged, that said Hawley & Wheeler, on the ———— day of ————, were justly indebted to him in the sum of forty dollars; that, to satisfy said indebtedness, said Hawley & Wheeler then drew an order, in his favor, upon said society, which order was accepted by said society, and thereby said Hawley & Wheeler transferred to him the sum of forty dollars, part of the amount due to them from said society for the erection of said church.

Horace Staples and George S. Adams, partners, by the name of Staples & Adams, alleged in their answer, that, previous to the contract of said Hawley & Wheeler, in said bill mentioned, said Horace Staples, on his own account, subscribed the sum of two hundred and fifty dollars, to aid in erecting the church or meeting-house, which was erected for the plaintiffs by said Hawley & Wheeler; that one Samuel Meeker, now deceased, had, in his life time, subscribed the sum of one hundred and fifty dollars for the same object, and that, by his last will and testament, he appointed said Horace Staples executor of his last will and testament, and trustee of all his estate, which will was duly proved and approved; that, when the plaintiffs contracted with said Hawley & Wheeler, to erect said church, it was mutually

agreed between said Hawley & Wheeler, and said Staples & Adams, (said Staples & Adams being merchants, dealing in lumber and other articles,) that said Hawley & Wheeler would procure lumber and other materials for said church, in part, from said Staples & Adams, and that the bill of said Staples & Adams against said Hawley & Wheeler, for said lumber and other articles, should apply in payment, or part payment of said subscription of said Horace Staples, and the balance, if any, in payment, or part payment of said subscription of said Samuel Meeker; that, if the bill should amount to more than enough to pay said subscriptions, said Hawley & Wheeler should give an order on the plaintiffs for said balance, and that the society might pay said balance to said Staples & Adams, and charge the whole amount to said Hawley & Wheeler; that this arrangement was made known to the plaintiffs, and they assented to the same ; that the only ground on which these defendants furnished said articles to said Hawley & Wheeler, was the arrangement aforesaid, and that they should not otherwise have allowed said Hawley & Wheeler to contract said debt, and that the amount of the debt due for the articles furnished as aforesaid, was, on the 5th day of June, 1853, $568.66.

By legal continuances, said cause came before the court, at the April term thereof, in 1854, when a committee was appointed to find the facts.

The report of said committee, among other facts, stated the following :

The said Hawley & Wheeler, in said bill mentioned, and the plaintiffs, made a contract for the building of a church or meeting-house, for $4,750; said Hawley & Wheeler built said church or meeting-house, accordingly; the plaintiffs made to said Hawley & Wheeler, according to said contract, the first three payments therein provided for, but did not make to them or to their assignee, said French, the fourth payment therein provided for, and said French, as

such assignee, claims of the plaintiff a further sum for extra work done to said church, by said Hawley & Wheeler. It was agreed by the plaintiffs, that there remained due from them, for the construction of said church, including all extra work done thereon, enough to pay the claims of all the other defendants against said Hawley & Wheeler, *viz.*, all the defendants except said assignee, as set forth in said bill The question, whether there is any more due from the plaintiffs in the premises, and if so, how much, was left open and undetermined, inasmuch as no testimony in relation thereto was laid before the committee.

After the completion of said church, said Hawley assigned to Wheeler, all his interest in any moneys remaining due from the defendants in the premises, and subsequently, said Wheeler assigned all his interest therein, including that so assigned to him by said Hawley, to French, for the benefit of said Wheeler's creditors, as in said bill alleged; said Hawley and said Wheeler were, at the commencement of this suit, bankrupt.

On the completion of said church, *viz.*, January 4th, 1853, there was due from said Hawley & Wheeler to said Staples & Adams, $570.67; to said John S. Hyde, at the same time, $100.55; to said Hezekiah Lockwood, at the same time, $29.94; at the same time, to said Charles W. Hall, $34; to said John Goodsell, $10.87; (the last item of his said claim having accrued on the 10th day of January, A. D. 1853;) to said Edgerton, $68; to said Daniel Burr, $40,30; to said Talcott B. Wakeman and Henry B. Wakeman, $136.70; and to said Elnathan Wheeler, $43.69; the last item of his said claim having accrued to him on the 29th day of December, 1852, which said sums were, due to said several persons for the causes and considerations, set forth by them respectively, in their respective answers. It was agreed, by the parties, that said Burr and said Hull were entitled to payment of said sums, by them respectively claimed, out of the moneys so due from the plaintiffs.

Said contract, between said Hawley & Wheeler and the plaintiffs, was made, in behalf of the latter, by a building committee, consisting of several persons appointed by them, of which committee the regular society's committee of the plaintiffs constituted a part, and all that was done by, or on behalf of, the plaintiffs, in respect to said church, its construction, or the payments made by them to said Hawley & Wheeler, was done by said building committee, and in the exercise of the powers given them by the plaintiffs.

The committee found the allegations in the answer of Staples & Adams, as to the subscriptions of $250, and $150, to be true, and that it was verbally agreed between them and said Hawley &.Wheeler, as therein alleged, in regard to the payment of such claims as should accrue to said Staples & Adams. Said agreement was, long before the completion of said church, made known by both said Staples & Adams, and said Hawley & Wheeler, to said building committee, and verbally assented to by them. And on the 5th day of March, 1853, said Staples & Adams lodged in the office of said town-clerk of Westport, for record therein, a certificate of lien.

It was found that the allegations in the answer of said T. B. and H. B. Wakeman, in relation to said subscriptions therein mentioned, were true, and that said H. B. Wakeman paid in the whole of his subscription, and said T. B. Wakeman all of his, except $65, which still remained unpaid ; that, after their said claim accrued to them, and long before the completion of said church, it was verbally agreed by and between said Wakemans and said Hawley & Wheeler, as in said answer alleged, in regard to the payment of said claim, and that this agreement was, by the parties thereto, made known to said building committee, and verbally assented to by them.

Said Elnathan Wheeler, on the 26th day of February, 1853, lodged with the town-clerk of said Westport, for record,

a certificate of lien, as alleged in his answer, and said Edgerton, on the 31st day of January, 1853, lodged at the office of said town-clerk of Westport, for record, a certificate of lien, as alleged in his answer. The allegations of said John S. Hyde's answer, as to the subscription therein mentioned, were found to be true.

After the claims of said Hezekiah Lockwood and said Goodsell had accrued to them, and long before the completion of said church, it was verbally agreed by and between them, respectively, and said Hawley & Wheeler, that their said claims should be paid and satisfied by the plaintiffs, out of the moneys which should be due to said Hawley & Wheeler, from the plaintiffs, which agreement was made known to said building committee, and verbally assented to by them.

Said Hawley & Wheeler and said claimants, *viz.*, Staples & Adams, T. B. and H. Wakeman, Lockwood, Hyde, and Goodsell, by their said agreements, did intend, and did, so far as the same could be done by said agreement, appropriate for the use of said claimants, so much of the moneys in the hands of the plaintiffs, which should become due to said Hawley & Wheeler, from the plaintiffs, as should be necessary therefor in payment of their said claims.

Said several agreements were communicated to the society, by a member of said building committee, who reported to said society the amounts payable according thereto, as being paid; said building committee, in assenting to said agreements, and in retaining moneys which had become due from the plaintiffs, for payment accordingly, and in all they did in the premises, acting on behalf of the plaintiffs. There was no evidence of any vote of the plaintiffs, in society meeting, nor of any distinct act in relation to said agreement, or said retention of moneys; but their attorney and counsel on the trial, in behalf of said society, expressed their assent to said agreement, as having been given in con-

formity with, said assent of said building committee, and recognized said retention of said moneys, by said committee, as the retention of the same by said society, for the purposes aforesaid.   And the committee found that said society did, as a society, assent, and retain as aforesaid, and submitted to the court the question, whether said facts authorized said finding.

The question, as to what decree should be passed in the case, was reserved for the advice of this court.

*Butler & Carter*, and *Ives*, for the plaintiff.

*Loomis & Warner*, and *Beardsley & Seeley*, for French.

*Dutton*, for Staples & Adams, and the other defendants.

HINMAN, J.   The bill alleges that the plaintiffs contracted, in writing, with Hawley & Wheeler, to build for them a church edifice, to be completed on, or before, the 15th day of October, 1852, for which they were to pay the builders the sum of $4,750 in instalments, the last of which, being $1,250, was to be paid when the house was completed ; that Hawley & Wheeler went on to perform labor, and furnished materials, though not to the complete fulfilment of the contract ; that the plaintiffs paid all the instalments except the last, and Hawley & Wheeler claimed that they had performed extra work on said building, to the amount of about thirty dollars, which has not been paid, and is not admitted to be due to the full extent of the claim ; that several persons, by divers distinct titles, claim the whole amount due from the plaintiffs, *viz.*, Staples & Adams' claim, $570.67; William S. Edgerton, $68 ; Elnathan Wheeler, $43.69 ; Henry B. Lockwood, $35.11 ; Charles W. Hall, $34'; Daniel Burr, $40 ; Hezekiah Lockwood, $29.94 ; John S. Hyde, $100.55 ;

John Goodsell, $10.87; T. B. and H. Wakeman, $136.77; and that Joseph B. French, as assignee of said Hawley & Wheeler, claim the whole of said instalment, together with the amount due for said extra work, and to recover the same, he has an action at law, now pending, against the plaintiffs. It is there stated that the plaintiffs are willing to pay whatever sum they are justly owing on said contract, to such persons as the court shall direct, but that the several persons, claiming the above balances, threaten to bring actions against them for the recovery thereof. The plaintiffs thereupon pray, that the balance due from them be settled and adjusted by the court, and that the defendants set forth, and discover, what right they, each of them, have to the balance claimed by each respectively, and that they interplead and settle their demands among themselves; the plaintiffs offering to pay the balance so found due from them on said contract, and to bring the same into court for that purpose.

The court found the allegations in the bill true, and ordered that the plaintiffs be allowed to retain in their hands the costs of the bill, and that the defendants, respectively, interplead, and set forth, their claims to the money. This being done, a committee was appointed, at a subsequent term of the court, to find and report the facts in the case, and on the coming in of the report, the case was reserved for the advice of this court.

On the trial before the committee, the plaintiffs admitted that enough was due from them to pay all the claims, except that made by French, the general assignee, and whether any more was due, was left open, and undetermined by the committee, no evidence being taken, or heard, in reference thereto.

The bill has thus far been treated as a mere bill of interpleader, but by the English practice, which prevails also in many of the United States, it could not be sustained as such, because it does not admit any definite sum to be due from the plaintiffs, but calls upon the court, for relief, in first settling

for them, the amount of their indebtedness for the building of the church.    Sto. Eq. Pl., p. 16, § 18, and p. 345, § 297.

It seems to have been irregular, therefore, for the parties to cause the court to find the 'allegations in the bill true, and authorize the plaintiffs to retain their costs, and then, before it appeared in any way, what sum was due, or, indeed, that anything was due, except; perhaps, by inference, to order the defendants to interplead.    " It is," says Judge Story, " the very foundation of a bill of this sort, that the plaintiff is a mere holder of the stake, which is equally contested by the defendants, and that he is wholly indifferent between them."    And it is upon this ground, that the plaintiff is ordinarily authorized to retain the costs of the application.    If he has any other object to accomplish than barely to learn who is entitled to the money, which he has in his hands, there seems to be no propriety in his retaining a portion of the fund to pay his costs, until it is determined whether he is entitled to the relief which he seeks; and even then, the court might think him not entitled to his costs, though it might grant the relief asked for; and if the bill may properly be treated as a bill, in the nature of a bill of interpleader, it would seem to have been proper for the court to ascertain the amount of the plaintiffs' indebtedness, before it ordered the parties to interplead; or, at least, to have appointed the committee to find the amount of it, as well as the facts in respect to the answers of the defendants. But none of the defendants, at the proper stage of the cause, saw fit to demur, or take any exception to the bill as originally framed ; and although it is said that the court may, in any stage of a case, dismiss a bill for similar irregularities, we do not understand it to be claimed that it is bound to do so, and it appears to us better, upon the whole to dispose of the case, upon the facts found in the report of the committee, applicable to all the defendants, except the general assignee of Hawley & Wheeler, leaving him to prosecute his action at law, for such balance of the indebtedness, as may be due, after paying such of the other defendants as are

entitled to a portion of the fund. We do not see that any injustice can be done by this course. The plaintiffs admitted there was enough due from them to pay, to all these defendants, the several amounts of their respective claims; and as we are of opinion that some of them are not entitled to their claims, it follows, that something must be left for the general assignee, which he will recover in his action at law, and this will leave him in the same condition, as to costs, that he would be in, if the bill was dismissed. We do this the more readily, under the peculiar circumstances of the case, in which the parties are numerous, the litigation expensive in reference to the small sums claimed by several of them, and all parties, except the general assignee, are anxious to have their rights to the fund settled; and the assignee, at this late stage of the proceedings, ought not to be heard to complain, when he had it in his power to stop the proceedings at the commencement, if the suggestions, which he now makes, are well founded. Besides, our chancery practice is, in many respects, variant from that which prevails in England, and in many of the states of this Union, and how far it is proper for us to go in adopting the English practice, it does not seem necessary for us now to determine. When no exception is taken to a bill of interpleader, before the hearing is closed, on account of its asking for relief, other than that upon which such bills are founded, it seems inequitable that the parties should be put to the expense of further unnecessary litigation. And in the case of *Nash* v. *Smith*, 6 Conn. R., 421, this court departed entirely from the well settled English practice of requiring an affidavit of the absence of fraud and collusion, to accompany the bringing of such bills, and permitted the plaintiff to proceed, although there was no offer to bring the money into court, and it had, in fact, been paid over to one of the claimants. Indeed, it has always been the course of our courts to simplify our practice, in regard to matters of form, as far as it was deemed safe to do so without endangering the administration of sub-

556          FAIRFIELD.

The Consociated Presbyterian So. of Green's Farms *v.* Staples and others.

stantial justice; and whether it may not be safe, and conduce to the ends of justice, to extend somewhat, the remedy, by bills of interpleader, and do away with the distinction between them and bills, which are called bills in the nature of bills of interpleader, it may be proper for the court hereafter to determine.

Coming then, to the disputed claims of the defendants to the fund in the plaintiffs' hands, it appears that, with the exception of the claim made by the general assignee, they are of two classes. First, are all the claims except those of Edgerton and Elnathan Wheeler; and secondly, the claims of these two persons. Besides these, there are the claims of Daniel Burr and Charles W. Hull, in reference to which nothing need be said, as the parties all admit that their claims are just, and entitled to payment, out of the moneys in the plaintiffs' hands.

In reference to the claims of the first class, it appears that, previously to the contract of the society with Hawley & Wheeler, these claimants all stood in the relation of subscribers, who had each subscribed certain sums in aid of the erection of said church edifice; that Hawley & Wheeler, in the progress of their work on the church, having occasion for labor and materials to be furnished them, applied therefor to each of these persons, and, to induce them to furnish them, they agreed with them, that the society might pay them for such materials and labor as they respectively furnished, to the extent of each one's account therefor, by applying the same on their several subscriptions, and thus, to the extent of labor and materials furnished by each, cancelling his subscription, and if there was still a balance due him, it was to be paid him in cash by the society, and the amount thus paid, together with the amount of subscription cancelled, was to be charged by the society to Hawley & Wheeler, as payment on their contract for building the church. This arrangement was made known to the society, before the church was completed, and in every instance assented to;

JUNE TERM, 1855.  557

The Consociated Presbyterian So. of Green's Farms *v.* Staples and others.

and relying on arrangements of this sort, these claimants did furnish labor and materials, to the several amounts found by the committee, which have never been paid for, and as Hawley & Wheeler have become bankrupt, must be lost to the claimants, unless the contemplated application can be made. In view of the imposing equity presented by the statement of these claims, we have looked with some solicitude for an answer to them.

First, it is said that the building committee, through whom the arrangements were made, had no power to assent to them on the part of the society.

We do not think it necessary to determine the precise powers of a building committee, in the strict sense of the phrase. This committee was composed of the ordinary society's committee, with others joined with them, and it appears that they all acted together in making the contracts, and in all that has been done in behalf of the society, in respect to said church edifice; and, as the report says, in the exercise of the powers given them by the society, and the society, through their counsel, on the hearing, expressed their assent to all that had been done, and so far as we know or believe, they continued to recognize their acts as properly done, up to the present time. Under these circumstances, we can not doubt their powers, both in respect to the original contract, and all the other incidental arrangements made with the claimants.

Next, it is claimed that the promise of the society to pay the claimants, was a promise to pay the debt of another, and therefore void within the statute of frauds; and, if otherwise, it was made without consideration, and therefore void on that ground. But this was not a promise to pay the debt of another. It was a promise, by the society, to pay their own debt to Hawley & Wheeler, or a portion of it, to the several claimants, and it was made in consideration of the extinguishment of the claimants' demands against Hawley & Wheeler. The agreement between Hawley & Wheeler and the claimants, as-

sented to by the society, operated to extinguish the claimants' demands against Hawley & Wheeler, and as an assignment of them to the society, which, in some of the cases, is said to be the only exception to the rule, that a *chose in action* is not assignable at law. Butler, J., in *Tatlock* v. *Harris*, 3 T. R., 174. Ld. Tenterden, C. J., in *Fairlie* v. *Denton*, &c., 15 E. C. L. R., 246. *Hodgson* v. *Anderson*, 10 E. C. L. R., 247.

The second class of claims, consisting of the claims of Edgerton and Elnathan Wheeler, stand upon different ground. These persons furnished materials, and rendered service in the construction of said church, each to an amount exceeding twenty-five dollars, at the request, and on the credit of Hawley & Wheeler, and within sixty days after they had ceased furnishing said materials, and performing such service, they each lodged with the town-clerk, a certificate, duly executed according to the provisions of the statute, each claiming a lien on the church, and the ground on which it stands, to the extent of their respective debts, and the question is, whether they are entitled to such lien,—or, in other words, whether a sub-contractor, who performs services, or furnishes materials in the construction, or repair of a building, on the credit and at the request of the contractor, without the assent of the proprietor, either in writing or otherwise, can maintain a lien upon the premises under our statutes, as they were when these debts were contracted? A majority of the court are of opinion that such a lien can not be maintained. The liens are claimed under the statute of 1852, which provides, that "every dwelling-house or other building, for the construction, or erection of which, any person shall have a claim for materials furnished or services rendered, exceeding the sum of twenty-five dollars, shall, with the land on which the same may stand, be subject to the payment of what may be due from the proprietor, and the same shall be a lien on such land and building, and shall take precedence," &c. Stat. ed. of 1854, p. 644. This language is, we are aware, very comprehensive, and literally

read, is perhaps sufficient to embrace the claims of sub-contractors. But it should have a reasonable construction, and, read in connection with other statutes which it does not appear to have been intended to repeal, it seems to us that it was not intended to embrace them. There is no privity between a sub-contractor and the proprietor, and no liability, on his part, to pay the contractor's debts, unless it is created by this statute. We have no occasion to doubt the competency of the legislature, even by an arbitrary expression of its will, to create a lien to the extent of the indebtedness of the proprietor to the first contractor, and to transfer it, by a sort of legislative assignment, together with the indebtedness, to the sub-contractor, for his security; still, when anything of this sort is claimed to have been done, the provision is so unusual, and contrary to what we are accustomed to consider a more reasonable course of legislation, that courts will examine it with care, before they give it such effect, and will require clear and unequivocal language in a statute, to authorize them so to construe it. This statute gives a lien for what may be due to any person from the proprietor. But unless it was the object of the statute to transfer the contractor's debt to the sub-contractor, there is nothing due from the proprietor to the sub-contractor, and, of course, nothing on which to predicate a lien.

We, however, place more reliance upon the fact that, at the time the act of 1852 was passed, there was a statute in existence, in relation to this very subject of sub-contractor's liens, providing, in express terms, that where they have claims to the amount of fifty dollars, or more, and their sub-contracts are in writing, and assented to by the other party, they shall be entitled to a lien on the house or building constructed or repaired. Stat. 642, ed. 1854. It appears to us, that a statute, like this, which seems to have been carefully drawn and provides for a priority, by contract in writing between the sub-contractor and the proprietor, could not have been intentionally repealed in the indirect mode claimed,

with no mention or notice taken of it in the act under consideration.

The object of the act of 1852 seems to have been to reduce the amount of indebtedness for which a lien may be claimed. Perhaps, also, it was thought that there might be a class of persons, not coming within the strict designation of sub-contractors, who might perform labor, or furnish materials, under circumstances justly entitling them to the benefits of a lien, to whom it was intended to extend the benefits of the statute.

On the whole case, then, we advise the superior court to allow, and cause to be paid, out of the moneys in the plaintiffs' hands, the debts of all the defendants except Edgerton and Elnathan Wheeler, whose claims we advise the court to disallow and dismiss; and in respect to the claim of Joseph B. French, described in the report of the committee, as the assignee of Hawley & Wheeler, that he be at liberty to prosecute the action in his favor, against the plaintiffs, to final judgment, deducting from the amount, which he might otherwise be entitled to recover, the several sums as aforesaid to be paid to the defendants.

In this opinion the other judges concurred, except Waite, C. J., who dissented.

Waite, C. J. I concur in the opinion expressed, except so far as the claims of Elnathan Wheeler and William S. Edgerton are concerned. As to them, I am clearly of opinion that, under the statute of 1852, they are entitled to their liens.

That act provides that "every dwelling-house, or other building, for the construction, erection, or repairs of which, any person shall have a claim for materials furnished, or services rendered, exceeding the sum of twenty-five dollars, shall, with the land, on which the same may stand, be subject to the payment of what may be due from the proprietor, and the same shall be a lien on such land and building."

Nothing can be more clear, explicit, and comprehensive than the language here used.   The only qualifications are, that the claim must exceed twenty-five dollars, and can only be charged upon what may be due from the proprietor. Nothing more is required than  to take the proper measures, prescribed in  the statute, to perfect the lien.    And it is admitted, that has been done in the present case.

It is found, by the committee, that these two defendants furnished  materials, and  performed labor in building the plaintiffs' meeting-house ; that the claim of each exceeds the sum of twenty-five dollars ; and that there is still enough due from  the plaintiffs to the contractors, by whom they were employed, to satisfy their claims.   Why, then, are they not entitled to satisfaction?   Their case comes within the plain and express provisions of the statute.

It has been said that it must be construed in connection with the preceding statutes, and be limited, in its operation, to the claims of those who have  been  employed by the proprietors of the building.   But this limitation, in my judgment, is neither warranted by the language of the statute, nor was it in the contemplation of the legislature.

The title of the act describes it,  as being in "addition to" the first statute, passed upon this subject, but in the body of the act, there is not  one word showing any connection with any previous statute.

The law, securing to mechanics a lien upon buildings, has been gradually extended, as its beneficial operation became manifest.

The first statute, passed in 1831, was designed merely to secure  the contractor against  the failure  of the owner of the building.   It gave him a lien, when the amount, due him upon  his contract, exceeded the sum of two hundred dollars.   The act of 1839, extended the right to  a sub-contractor, having a claim to the amount of fifty dollars.   The act of 1852 gave a lien to any person, who had furnished materials, or performed labor, to the amount of twenty-five

dollars, and charged it only upon the sum remaining due from the proprietor of the building.

Finally, the general assembly, at its last session, repealed all these statutes, and passed a new one, almost in the very words of the act of 1852, with some additional provisions for the further benefit of the laboring mechanic. The lien is given, not only for work done upon a building, but upon any of its appurtenances, and subjects the owner to the payment of the claim, whether he is, or is not, indebted upon his contract, for the building or the repairs,—thus giving more adequate security to the laboring man, than was provided in the former statutes.

It is further said, that the construction, here given to the act of 1852, imposes onerous duties upon the owners of buildings, requiring them to see that workmen and material men are all paid. But those duties are less onerous than those imposed by the act of the last legislature. The former merely requires them to see to the application of the payments, which they have agreed to make. The latter statute requires them to pay the liens, whether they are, or are not, indebted to any one for the amount.

It is better, far better, that they should be required to see that the claims of such men are satisfied, than that they should be defrauded by irresponsible builders. If men choose to employ such builders to erect, or repair their buildings, let them take proper security, or so regulate their payments that the workmen, and material men, shall not lose their labor, and their property, by the insolvency of the builder, and their families suffer in consequence.

The law, upon this subject, is a very wholesome and beneficial one, and well calculated to guard the interests of a class of men, who have formerly been, in many cases, great sufferers, and are peculiarly entitled to legislative protection. It should receive a fair and liberal construction, and if it should be holden that the statute, now in force, is insufficient for that purpose, from the disposition hitherto manifested by

the legislature, I have no doubt that it will soon be made fully adequate for such purpose.

And it seems to me that there is no Christian community, that would not rather take all the measures necessary to protect the interests of the laborers on their church, than worship in one, built by persons, who have been defrauded of their labor and property by bankrupt builders, employed by that community.

For these reasons, I am of opinion that Wheeler and Edgerton have valid liens upon the plaintiffs' meeting-house, for the work they have done upon it, and the materials they have furnished, and are entitled to payment from the amount still due from the plaintiffs to the insolvent builders.

Decree accordingly.