BENEDICT AND ANOTHER *vs.* THE DANBURY AND NORWALK RAILROAD.

While the statute, passed in 1852, securing to mechanics a lien on land and buildings, was in force, the defendants entered into a contract, which, among other things, provided for the erection of a passenger depot at the terminus of the defendants' road, and which also provided that the contractor should not underlet any part of the work, without the written assent of the defendants' engineer, upon the written application of the contractor therefor; afterward the contractor entered into certain sub-contracts, in pursuance of which the sub-contractor erected the building specified in the original contract, filed a lien for a balance due him for work upon such passenger house and assigned his claim to the plaintiffs. On a bill in equity, to enforce such lien, it appeared that the engineer of the defendants drew the specifications for such passenger depot, delivered them to the sub-contractor, superintended the building and gave directions to the sub-contractor during the progress of the work. The defendants, by their directors, voted to advance to the contractor, to be paid to such sub-contractor certain amounts of money, and also paid him $2,200, on an order from the original contractor for $ and requested the sub-contractor to cause such station-house to be insured, and to assign the policy of insurance to them. But such votes did not purport to assent to such sub-contract and there was no written assent of the defendants thereto, by their engineer or otherwise, nor was there any application to them for such assent. Held that the lien claimed by the plaintiff was invalid, and that the bill ought to be dismissed.

THIS was a bill in chancery, brought by the plaintiffs, who were the assignees of John Q. Adams, for the purpose of

enforcing a mechanic's lien upon the passenger station-house of the defendants, situated in Danbury.

At the term of the superior court, holden in October, 1855, the cause was referred to a committee, whose report embraced the following facts.

The defendants, on the 18th day of September, 1850, entered into a written contract with Beard, Church & Co., to construct the Danbury and Norwalk Railroad, and, among other things, to build the passenger depot, mentioned in the bill. By the terms of said contract, said Beard, Church & Co., were not permitted to underlet any part thereof to any other persons, without the written assent thereto of the engineer of the defendants, for the time being, and upon the written request or application of said Beard, Church & Co.; and it was further provided by said contract, that the contractors should, upon the application of such engineer, discharge any laborer, or other person, from their employment.

On the 7th day of November, 1851, said Beard, Church & Co., and John Q. Adams, of Windham, in this state, made a contract in writing, which had been lost, but its contents in substance were, that said Adams, in consideration of the gross sum of $4000, was to furnish materials for, and build an engine-house, wood and water shed and passenger depot building, at the northern terminus of said railroad, in the village of Danbury; which said things, thus contracted to be, and which were done, were part and parcel of the things contracted to be done by said Beard, Church & Co., in their contract with said railroad company.

Three other contracts, not in writing, were made between Beard, Church & Co., and said Adams, viz: the first contract, for the building of two bridges upon the line of said railroad ; the second for the building of the station house, &c., at Bethel ; and the third for the building of the freight house in Danbury.

To said contract in writing, which was the last made and performed, for the performance of which said Adams was to

receive the said sum of $4000, there was no evidence of any written assent by the engineer of said railroad company, nor of any written request or application to said engineer by said Beard, Church & Co., in reference to said contract, unless the same could be inferred from the following facts which the committee found to be proved:

1. Harvey Smith was the chief engineer of said railroad company, from its commencement to its completion, and was appointed the superintendent thereof on the 9th day of August, 1851.

2. By the original contract between said railroad company, and Beard, Church & Co., said engineer was constituted the agent of said railroad company, to give the written assent of said company, to all sub-contracts, on the written request, or application, of the original contractors.

3. Said superintendent and engineer drew the specifications in writing for said passenger depot or station-house, and delivered them to said Adams. Said engineer made alterations, and interlineations in writing in said specifications, superintended the work and gave directions to said Adams, during its progress, which were followed.

4. Eli T. Hoyt was the president of said railroad company from the time of its organization until the completion of said road, and he and Edgar S. Tweedy, Esq. were the finance committee during all the time said Adams was engaged in the building of said passenger depot, or station-house, and until its completion by him, and said Hoyt & Tweedy knew of the existence of said contract and acquiesced therein; but whether said contract was known to the other members of said board of directors was not found, unless it may be inferred from the foregoing facts and the votes of said railroad company, hereinafter referred to.

5. Beard, Church & Co., on the 14th day of January, 1852, made an assignment, and from that time were unable to pay their debts. Soon after, the president and secretary of said railroad company enquired of Adams, and ascertained from

him, the amount due to him for the work and labor he had performed, and the materials he had furnished under his contracts with said Beard, Church & Co., said Adams then being engaged in the work upon said passenger station-house, and thereafter, the following votes were passed at regular meetings of the board of directors of said railroad company, and, in pursuance of said votes, the secretary of said railroad company gave orders on the treasurer of said company, which orders were, by said secretary, entered upon the order book of said company, which votes and orders were as follows :

*Voted,* That we advance to the contractors a sum not exceeding eight hundred dollars, to be paid John Quincy Adams on account of buildings.

*Voted,* To advance to the contractors the sum of five hundred dollars, to pay John Quincy Adams on account of buildings.

*Voted,* That the finance committee be authorized to make such advancements to the contractors to pay for buildings, as they shall think proper.

Copies of the Order book, of the Danbury and Norwalk Railroad Company :

" Beard, Church & Co., No. 95, $800, January 15, 1852 ; advanced by directors January 14, 1852, to pay John Quincy Adams on account of buildings."

" Beard, Church & Co., No. 102, $500, February 2, 1852 ; advanced to pay John Q. Adams."

" Beard, Church & Co., No. 118, $2,200, March 6th, 1852 ; advanced to pay J. Q. Adams, on account of buildings."

Said railroad company, before making the payment to said Adams of $2,200, required him to obtain a policy of insurance on said passenger depot and assign the same to said company, which he did on the 5th day of March, 1852. Said Adams, with the knowledge and acquiescence of said rail-

road company, continued thereafter to labor on said passenger depot and to furnish materials therefor. About the 1st of May, A. D. 1852, he completed it.

In performing the contract, for which Adams was to receive $4000, said engine house and said wood and water shed were first completed, and said passenger depot was last completed; and the work, labor and materials for said passenger depot constituted more than one half the entire work, which was contracted to be done for the entire sum of $4000.

The lien which was set forth in said bill was duly filed and recorded, May 28, 1852; and said lien, and the indebtedness on which the same was predicated, were assigned to the plaintiffs on the 4th day of August, 1852, of which said railroad company were duly notified.

At the time of filing his lien, there was due to Adams, from Beard, Church & Co., for the work and materials which he had done and furnished, pursuant to his said four contracts with them, a balance of $1,055, to secure which, said lien was filed by said Adams, as aforesaid, upon said passenger station-house.

On the 3d day of March, 1852, Beard, Church & Co., drew the following order on the said railroad company, for the sum of $3,025, in favor of John Q. Adams, the balance then due to him from them, under his contracts.

"DANBURY, March 3, 1852.

" Treasurer of the Danbury & Norwalk Railroad Co.:

" Please pay John Q. Adams three thousand and twenty-five dollars and place to our account.

" BEARD, CHURCH & Co."

Said order was, on the 5th day of March, 1852, presented to said railroad company for acceptance; said company paid, upon said order to said Adams, the sum of $2,200, and took therefor the following receipt, which was signed by said Adams.

Received, Danbury, March 5, 1852, of the Danbury and Norwalk Railroad Company, twenty-two hundred dollars, on account of the order drawn by Beard, Church & Co., on the treasurer of said company, dated March 3, 1852, for three thousand and twenty-five dollars, it being understood that in making this payment, said railroad company do not accept said order for more than the amount paid.

Upon this finding, the case was reserved for the advice of this court.

*Ferry*, for the plaintiffs.

1. The certificate of lien, demand $1000, which amount is found due by the committee. By the recognized doctrine relating to the application of payments, this amount is due for the construction of the building described in the certificate.

2. The finding of the committee shows that the statutory requisites, as to the written contract, and the assent of the railroad company thereto, have been complied with. Stat. p. 642–3. 1. The statute requires that the defendants should have assented to the contract. 2. That the evidence of such assent shall be in writing. The report finds both these facts.

*Averill* and *Carter*, for the defendants.

1. There was no assent in writing to the sub-contract under which the plaintiffs claim, and no facts are proved from which an assent in writing can be legitimately inferred. Such a consent to a letting or transfer, as is contemplated in the original contract between the defendants and the plaintiffs, would not, if proved, be an assent in writing, within the meaning of the lien law.

2. Neither are those votes referred to by the committee an assent, in writing, to that contract in any point of view.

3. The policy of insurance does not show an assent in

writing. It rather shows that the $2,200 was applied to the payment of the amount expended in the building required to be insured, or upon the buildings in the contract, stated in the bill. The votes, authorizing the payment of money, are to the same effect.

HINMAN, J. The plaintiffs, as assignees of John Q. Adams, seek to enforce a mechanic's lien on the defendants' passenger depot building, at the terminus of their railroad, in Danbury. Adams erected the building and did other work connected with the railroad, under contracts between him and Beard, Church & Co. Beard, Church & Co., were the contractors for the building of the whole road, and of certain buildings connected with it, among which was the depot building on which the lien is claimed. That portion of this work which Adams performed was done under four sub-contracts between him and the original contractors, but only one of these was in writing. The written contract was made in Nov. 1851, while the work was progressing under the former parol contracts, and he commenced work under it before he had finished work under the former contracts; and as payments were made from time to time, without any specific application of them, a question is made, whether the $1055, which is the balance due for his whole work, can be said to be due for work under the written contract any more than it is due under the parol contracts,—and whether the lien is not claimed for a general balance of account, which is not specifically referable to any contract; in which case, it obviously cannot be sustained. We have come to the conclusion, on other grounds, that the lien claimed in this case, cannot be sustained, and therefore do not decide this question. The certificate of lien was filed in May, 1852. The law then in force required a sub-contractor's contract to be in writing, and to be assented to in writing by the party for whom a building was erected, or no lien was created in favor of the sub-contractor. Stat. Ed. 1854,

p. 642, § 2.　*Smith* v. *Cong. Soc. of Naugatuck*, 23 Conn. 635.　*Consociated Presbyterian Soc. of Greens Farms* v. *Staples and others*, 23 Conn. 544.

And the original contract between the defendants and Beard, Church & Co., also provided that they should not underlet any part of the work without the written assent of the engineer of the defendants, upon the written application of Beard, Church & Co., therefor.　And Beard, Church & Co., were bound to discharge any laborer from their employment, on the application of such engineer.

The written contract with Adams was for the building of the passenger depot and two other buildings in Danbury; all for the sum of $4000.　But there was no written assent of the defendants to this contract, by their engineer or otherwise, unless certain facts which appear in the report of the committee amount to such assent, and the principal question in the case is whether these facts do amount to such assent. There was no application in writing or otherwise to the defendants, or their engineer, for any such assent as was provided for by the contract between the defendants and Beard, Church & Co.　But we place no reliance on this fact; because this was a stipulation introduced into the contract for the sole benefit of the defendants, and, not being one of the requisites of the statute, it was obviously competent for the defendants to waive it, and we suppose the written assent of the defendants to a sub-contract, would, without doubt, amount to such waiver.　Coming then to the question, whether the facts relied upon by the plaintiffs are sufficient to show the written assent of the defendants to the sub-contract between Adams and the original contractors for the road, let us see what these facts are, and what inferences can fairly be drawn from them.

It is claimed that it was the duty of the engineer to give his assent to this contract, because the contract between the original parties contemplated that sub-contracts would be made, and provided for his giving his assent thereto, on be-

half of the defendants; and the presumption is, that he did not neglect his duty. But it no where appears that his assent was applied for, either by Beard, Church & Co., or by Adams; and, by the terms of the contract, there could be no neglect in this respect, until a proper application was made for his assent. Besides, if it be assumed that it was his duty to assent, this of itself amounts to nothing. Had there been circumstances going to show that he did in fact assent in writing, perhaps, in a doubtful case, the fact, that it was his duty to give such assent, might be entitled to consideration on the question. Without such circumstances, this supposed duty can not be held to be proof of the discharge of it. It is not the written assent required by law and this is not an application to compel the engineer, or the company to perform their duty in this respect. It is also said that this written assent need not be signed and that no particular formality is required in giving it. This may be admitted, still there must be the defendants' assent to the sub-contract, and it must be in writing. It is pressed upon us that, because the engineer drew up the specifications for this building, and delivered them to Adams, he must, in this act, have known of and assented to the sub-contract. If he had drawn up the specifications and caused them to be inserted in the sub-contract as a part of it, it might amount to the written assent required, especially as there does not appear to have been any dissent to it by any body. But, under what circumstances these specifications were made, whether they were drawn up before, or after the contract with Adams, and whether that contract refers to them in any way, no where appears. It cannot be presumed that important facts like these would have been left without proof, if there was anything in them favorable to the parties. Without some evidence, therefore, other than the naked facts that the engineer drew up the specifications for this building, delivered them to Adams, and at some time, or times, made interlineations and alterations in them, we cannot say necessarily that he must have as-

sented to a contract that does not appear to have been before him. And perhaps it is not unworthy of note that he would hardly have ventured to make alterations and interlineations in these specifications, had they constituted any part of the contract between Adams and Beard, Church & Co.

Similar remarks apply to the fact that the engineer superintended the work, and gave directions to Adams during its progress. This shows that he recognized Adams as engaged in the construction of the building, but it shows no recognition of the contract, much less a written recognition and assent to it.

After the failure of Beard, Church & Co., the president and secretary of the railroad company ascertained from Adams the amount due him for work &c., under his contracts, and at subsequent meetings of the directors, they voted to advance to the contractors, to be paid to Adams on account of buildings, a sum not exceeding eight hundred dollars; and again, in the same form, a sum not exceeding five hundred dollars; and again on the 20th of Feb. 1852, they voted that the finance committee be authorized to make such advancement to pay for buildings as they thought proper. The sums mentioned in the two first votes were advanced according to the terms of them; and under the last vote, an order drawn by the contractors, Beard, Church & Co., in favor of Adams, for the sum of three thousand and twenty-five dollars, was accepted and paid, to the amount of twenty-two hundred dollars, on a stipulation that the payment was not an acceptance of the order for more than the amount paid.

These votes do not purport to assent to the contracts with Adams. In this respect they are carefully guarded. They vote to advance to the contractors, Beard, Church & Co., and because they say that it was to pay Adams, it only shows that they knew the contractors were indebted to him. But it does not recognize the debt, as one which they were

bound to pay, because Adams had a lien for it on their buildings. There is nothing in the votes or in the information communicated to the directors before they were passed, or in both combined, that shows they knew the terms of the contracts referred to. They do, it is true, recognize Adams, as a party who had performed work upon their railroad buildings, under contracts with the contractors. But they no more recognize the written contract, than any one or all of the parol contracts. They knew there were contracts between Adams and their original contractors. But this is not assent in writing to those contracts. And if, as is very probable, there was a kind of tacit assent to them—that is to say, if the defendants had no objection that Beard, Church & Co., should employ Adams to do a portion of the work which they had contracted to do themselves, it does not follow that they would not object to incumber their property by a lien for an indebtedness, the amount of which they only ascertained after the failure of the first contractors. The object of requiring an assent in writing to sub-contracts, certainly one important object, was to enable the general owner of property on which buildings were being erected, to know the extent of the incumbrance, to create that privity of contract between him and the sub-contractor, that should make it both equitable and legal that his property should be charged with the debt of another. The votes show that, to the extent of the money advanced under them, the defendants were willing to assist Adams in obtaining payment from the contractors, and this he has done. To use them now to subject the defendants for the full amount of his debt against the contractors, we think was not contemplated when they were passed, and ought not to be allowed.

When the defendants accepted Beard, Church & Co's order, and paid twenty-two hundred dollars on it, they required Adams to cause the depot building to be insured, and to assign the policy to them. Not much reliance was placed on this fact, as showing an assent in writing to his contracts

with the contractors.    And it seems sufficient to say that we do not think it amounts to such written assent.

The defendants made a question, whether the lien should not have covered all the buildings erected under the written contract, set out in the bill, but as we have decided the case in their favor, on other grounds, it is unnecessary to consider it.  We advise the superior court that the plaintiffs' bill be dismissed.

In this opinion STORRS, J., concurred, WAITE, C. J., being absent.

Bill dismissed.