Daniels, J.
The plaintiff performed work and labor in erecting and finishing a house on the north side of Fifty-eighth street, in the city of New York.. The work was done and the materials for it supplied under a written contract entered into on the 19th of September, 1885, by which it was covenanted that the work should be completed on or before the 1st of March, 1886. It was not completed at that time, but the evidence tended to establish the fact that it was completed by the first of the following month of June. This was denied by the defendant, and evidence on her part was given to establish the fact that it was not completed before the commencement of these proceedings for the enforcement of a lien in the plaintiff’s favor to obtain the payment of his debt, under chapter 342, of the Laws of 1885. His letter of the 10th of June, 1886, contained a statement which on its face appeared to be in conflict with his evidence that his work was completed on the first day of that month. But the explanation given by him of the letter was, that the reference contained in it to unfinished work was not what he had agreed to perform by the contract, but other things which the defendant or her husband, who acted for her in the supervision and direction of the work, desired to have performed. Which side was right was a question that addressed itself to the determination of the court, before which the witnesses were sworn. and examined. And as credit has been given to the plaintiff’s statement in the decision which was made, it must be assumed now that his evidence appeared more reliable as to this fact than the other evidence contained in the case relating to it.
The work to be performed and the material to be supplied by the plaintiff, included “ carpenters, framers, roofers, tinners, bell hangers, and other works required in the erection and completion ” of the building. But while this clause is broad enough to include all the work required in the erection and completion of the building, it was evidently not the design of the parties that it should be so understood.
*229 For the mason work, as well as the painting about the building and the materials required for these divisions of the work, were awarded to and performed by other persons. And it has not been claimed on behalf of the defendant that either or any part of the other work was included in or to be performed by the plaintiff. And for the construction and effect of the agreement, the court is entitled to place itself in the same position as the parties were at the time when it was made, and to give it the understanding and effect which it must have had with them under the other circumstances appearing in the case. The language was loosely used and it tends to characterize the contract as one which was made, without either close attention or accurate discrimination. The amount to be paid to the plaintiff for his labor and material was the sum of $11,500. This was divided into seven payments. Five of them were made without any substantial dissention or disagreement between the parties. And an additional sum of $1,000 was, also, paid, which it was alleged by the plaintiff was part of the $3,000, forming the sixth payment under the agreement. This, however, was denied by the defendant upon her information and belief accompanied with the statement that so much of the sixth payment had been made upon the extra work performed by the plaintiff upon the building. But as the extra work amounted to no more than- the sum of $759.90, this payment could not be exhausted in that manner. But. if it was to include the extra work, concerning which, however, no proof was given, still a portion of the sum would remain to be applied upon and constitute a part of the sixth payment mentioned in this agreement. The court concluded this $1,000 to have been made as a part of the sixth payment mentioned in the agreement. Whether it was right in drawing this conclusion from the case it is not essential to discuss or consider, for the reason .that for" all the practical purposes of the case, the result will be the same whether the entire $1,000 was applied upon and paid as a part of the sixth installment, or only so much of it as remained after paying for the extra work.
Neither the work of the masons nor that of the painters was completed by the 1st of June, 1886, or by the time when this action was commenced, on the twenty-third day of that month. And for that reason it is objected that the residue of this sixth payment, as well as the remaining balance afterwards of $500, had not become due or payable ■ at the time when the suit was commenced.
The objection has been placed upon the language of the contract binding the defendant only to pay the sixth payment “when the building is all completed,“ and the *230 balance of $500 “after the expiration of thirty days and when all the drawings and specifications have been returned to the architects. The contract further provided that in each case of the payments a certificate should be obtained from and signed by the architect to the effect that the work had been done in strict accordance with the drawings and specifications, and that he considered the payment properly due. And that a certificate should also be obtained by the contractor from the clerk of the office where liens are recorded, that he had carefully examined the records and found no liens or claims recorded against the work or on account of the contractor. These provisions, like the one already considered, are to be construed under the light afforded by the attendant circumstances and the intent of the parties as that is to be gathered from the language of the agreement. It was made to include the plaintiff’s labor, services and material, and not that of either the masons or the painters. And it is accordingly not reasonable to suppose that the obligation to pay the payment of $3000 was intended to be subordinated in point of time to the final completion of the building by the masons and painters, or other persons who might be employed upon it after the plaintiff had performed his contract. There was no object which could have been subserved by making the obligation to pay the plaintiff for his work and materials dependent upon the performance of the agreement of the other persons, over whom he had no control and with whom he was in no way connected.
And while the language is broad and general, it is not entitled to a construction which would subject him to that degree of delay in obtaining payment for his services and material. The more consistent construction is, and that which probably may safely be inferred to have been within the contemplation of the parties, .that he was to be paid this sum of money when the building was all completed so far as its completion depended upon the performance of his agreement. That is as far as the language under the circumstances in which it was employed can reasonably be extended. And if the plaintiff performed his obligations as they have been defined in the agreement, then upon that performance, he became entitled certainly to the payment of the residue of this sixth payment.
He was not deprived of his right to this money by the circumstances that his work was not finished or completed on or before the 1st of March, 1886, but extended to the 1st of June, three months afterwards. For the delay in this time appears to have been caused by extra work required to be, and which in fact was performed under the authority of the defendant, and by the loss of time in waiting for the *231 other work in progress about the building, and fairly required to be first performed before the plaintiff could proceed in doing that for which he had obligated himself by the agreement.
He did not obtain the architect’s certificate, as the contract provided he should, to entitle himself to either of these payments. But the evidence given in the case tended to establish the fact that the certificate of the architect was not withheld from him because the work had not been properly finished or completed, but for the reason that the husband of the defendant, having charge of the work, required a change in the knobs on the doors, which the testimony tended to show had been furnished, as they were required to be by the contract.
After applying for the certificate, the architect, as the evidence tends to prove the fact, indicated small additions to the work to complete it accordihg to his satisfaction. And the proof is that they were performed and that the architect still declined to give the certificate, because Mr. Gleason would not allow him to do so until the knobs were replaced. That refusal, proceeding from the instigation of the person having charge and management of the building under the defendant, as the fact was found to be in accordance with the testimony, was entirely unreasonable and entitled the plaintiff to demand his money without producing the architect’s certificate. Smith v. Alker, 102 N. Y., 87, 90-1; Woodward v. Fuller, 80 id., 312; Nolan v. Whitney, 88 id., 648.
It was also proved that from and after the 12th of June, 1886, four persons who were employed by the plaintiff in the progress of his work upon the building, filed mechanics’ liens against it in the office of the clerk of the county of New York. Prior to that time no liens appear to have been filed in any form against the property, the plaintiff’s notice having been filed near the time of the commencement of his action. It is conclusively to be presumed from these facts that there were no liens filed or recorded, either by or under the plaintiff, against this property on the first of June 1886, when he claimed to be entitled to the payment of the residue of this sixth sum of money. But the certificate of the clerk was not obtained and produced to the defendant, as that was required by another condition of the agreement. It is equally manifest that she suffered no loss whatever by the omission to furnish this certificate to her; neither does it appear that she required it at the time from the plaintiff, or objected to making the payment she did make, or to her liability to pay because of its absence. The failure to produce it was a fact, resulting in no prejudice or loss whatsoever to the defendant, as the *232 facts at the time existed, and the objection made to paying the plaintiff because of this omission is of the most strict and technical character. By the agreement, it was provided that the certificate should be produced in each case of payment, but it does not appear at any time to have been obtained or produced. It certainly was not when the part of the sixth payment was made, which is represented by the sum of $1,000, which was paid. And the act of making that payment, as well as the others, which were probably made without the clerk’s certificate, is a fact from which it may be presumed, as the certificate itself would have been of no benefit whatever to the defendant, that obtaining and producing it was designed and intended to be waived.
The circumstances are consistent with no other intention on the part of these parties. And that it could be waived, although the contract itself was a sealed instrument, seems to result from the legal principle which has been settled by the authorities. Friess v. Rider, 24 N. Y., 367, 369; Lattimore v. Harsen, 14 Johns., 330; De Lacroix v. Bulkley, 13 Wend., 71; Pechner v. Phœnix Insurance Company, 65 N. Y., 195; Homer v. Guardian Life Insurance Company, 67 N. Y., 478, 481.
And the case of Barber v. Rose (5 Hill, 76), declares nothing that is inconsistent with the power of the parties to dispense with the observance of this condition by their acts, as they appear to have done in this instance. Even a statutory or constitutional provision may be waived by a party. And a waiver may as well result from the acts, as from the statements made by the party entitled to the observance of the condition. Moses v. Bierling, 31 N. Y., 462; Johnson v. Oppenheim, 55 id., 280, 291.
And it is in the nature of such a waiver, when it has once occurred, that the party shall not afterwards be permitted to insist upon the performance of the condition. Matter of Cooper, 93 N. Y., 507, 512.
The failure to supply this certificate, therefore, furnished no ground for refusing to pay the plaintiff so much of the sixth payment as had not previously been paid by the defendant.
The contract further declared that there should be no legal or lawful claims against the contractor in any manner from any source whatever for work or materials furnished about the building. There were such claims in favor of the four persons who filed liens against the property after the twelfth, and during the month of June, 1886, but this provision of the contract does not stand in the way of the plaintiff’s right to maintain the action, for it was not made a condition to his right to payment. It was a mere coven *233 ant, for which, if the defendant has sustained any injury whatever, her remedy is by way of a claim for damages.
¡Neither was the defendant entitled to a dismissal of the complaint on account of the plaintiff having sub-let portions of the work. The agreement did declare that this should not be done without the consent in writing of the defendant, but the fact that it was so done, without her consent, will not prevent him from recovering the stipulated compensations for the work, which in fact, has been done by the permission of the defendant, resulting in the performance of the agreement. It was not provided that he should forfeit his right to proceed against the property or the defendant for the recovery of the amount owing to him by the contract, in case this restriction was disregarded by him, and he was accordingly not divested of his statutory right so to proceed. The cases of Benedict v. Danbury R. R. Co. (24 Conn., 320), and Bowen v. Aubrey (22 Cal., 566), sanction no such principle. But they do in substance hold that the person, or persons, to whom the work may be subcontracted, where the authority to make that disposition of it has been forbidden by the agreement, claiming as they must under the contract, will not be permitted to enforce the collection of their demands by means of such proceedings against the property itself. That is as far as the authorities have gone. They have not, neither has any provision contained in the statute, disabled the contractor, after having sub-contracted portions of the work, without such consent in writing, and the work itself has been completed according to the provisions of the contract, or in any form prevented him from collecting and securing his compensation by proceedings against the property under the authority of the statute.
The further objection has been taken that the plaintiff could not avoid the effect of the delay in the completion of the work by proof of the fact that the other persons to whom portions of the work of erecting and completing the building delayed their work in such a manner as to prevent the plaintiff from completing his own before the time when it is stated to have been actually finished. This objection is taken upon so much of the contract as has provided that the defendant should not be liable for any loss or damage which should happen about the work for materials used or employed in completing it, or injuries by either workmen or the public, or for damage to adjoining property which might have been presented by the contractor or his workmen; and that the different contractors efn ployed should each be responsible to the other for all damages to work, persons or property, and for loss caused *234 by neglect, by failure to finish work at the proper time, and preventing each portion of the work being finished by the contractors at the dates named in the contract for completion, or from any other cause. But it could have been no part of the intention of these stipulations to deprive the plaintiff of his légal right to so much additional time in the performance of his work as he would be deprived of by the progress of the persons having other work in charge under the defendant, over which he had no control.
The intention of this subdivision of the contract was to oblige the parties engaged in the work of erecting and furnishing the building, to look to those employed about it for indemnity for any injury resulting to another from their inattention, neglect or default. And so far, it probably would be free from substantial ground of objection. But the plaintiff is not claiming indemnity for any loss or injury that may have been sustained by him through the failure of the masons and painters to progress more rapidly than they did with the work, but proof of the facts has been given to explain the reason, or cause, preventing the completion of the plaintiff’s work upon the building before the 1st of June, when by the agreement it was to be finished by the 1st of March. It was to entitle him to this extension of time without liability on his part, and not for indemnity for any default or misconduct of these other persons. And to that extent he had the legal right to rely upon these circumstances so far as they indicated the impossibility of completing his work before the 1st of June, 1886. Stewart v. Keteltas, 36 N. Y., 388; United States v. Speed, 8 Wallace, 77.
The contract further provided, that in case the contractor failed to finish the work on or before the time agreed upon, he should allow to the owner of the building by way of liquidated damagés, the sum of ten dollars for each and every day thereafter that the work should remain incomplete. And in the disposition which was made of the case at the trial $250 was allowed by the court for a delay of twenty-five days, not caused by the failure of other parties about the work, or of the defendant, to proceed with its performance. The defendant claimed a much larger allowance, and insisted that no delay could be excused which was caused by extra work, for the reason that the time lor which the completion of the plaintiff’s works hould be extended on account of such work, was not mentioned in the estimate, or statements, of its expenses. But while that was the fact, and the plaintiff was in this manner deprived of the benefit by way of extension of the time consumed in the extra work done upon the building by him, he was not thereby subjected to any large further allowance by way of *235 damages for that delay in the completion of the building. Bor evidence was given by himself in the course of his examination as a witness that he had been at different times delayed in waiting for work to be done which it was necessary should be completed before he could proceed with his own, from time to time aggregating in all fifty-three days. The court allowed the defendant by way of damages for twenty-five days, making, with these others, seventy-eight days, and leaving an inexcused difference only of twelve days, for which, under the evidence, a further allowance should have been made to the defendant, because of this delay, of $120.
The agreement provided that the owner of the building should have the right to make changes in the work as it progressed, and that the difference for work omitted should be deducted from the amount of the contract by a fair and reasonable valuation. And it appeared by the evidence of the architect that wash trays were omitted on each of the five floors of the building. They were to have. been put in by the plaintiff, but were not. And the statement of the architect was that they would be worth about fifty dollars a set, or fifty dollars for each floor, making the sum in all $250. It was shown by the same witness that the plaintiff had put in a better trim in the main hall than his contract required, and more panels in the parlor doors. And for that reason it was urged that no deduction should be made for these omitted trays. But it was not stated by the witness, neither was other evidence given sufficient to prove the fact, that this change in the work was in fact, or was to be, accepted as an equivalent for the omission of the trays. And as the contract expressly provided for the deduction of the difference, it was not a counter-claim or set-off which the defendant was bound, by her answer, to allege, but it was a deduction to which she was entitled by the language of the agreement, and the proof relating to the plaintiff’s case, received in the action without objection. The evidence of the architect was by no means positive that the difference was as great as this sum of $250. And probably as fair a construction of its weight and effect as it would be entitled to receive, is that the difference would amount to the sum of $200. And that allowance, under the evidence, the defendant is entitled to, from the contract price of this work.
While the sub-contractors were not entitled to maintain proceedings on their part for the enforcement of hens in their favor, as the plaintiff was forbidden to sub-contract the work, the defendant has not been injured in the least by the adjudication provided for their protection by way of payment out of the moneys due the plaintiff, as defendants *236 brought into the action by him. They were necessary parties for the disposition of the controversy. The defendant would not have been secured complete protection in the way of closing up all future avenues for litigation without bringing these other claimants into the proceeding. But as they, under the authorities, appear, by the force and effect of the contract with the plaintiff, to have been disabled from maintaining proceedings affirmatively by themselves, they were not entitled to costs or disbursements, as defendants herein.
Strictly speaking, they were entitled to no relief, whatever, against the defendant, and the judgment so far as it awards costs to them is without authority. So much of it the defendant is entitled to have reversed. But as the joinder of these persons as defendants can produce no detriment, whatever, to her, but rather has provided her with the advantage of having their demands paid out of the amount due to the plaintiff, it should be no further interfered with so far as it is in their favor.
The plaintiff has taken no appeal from the judgment, and, therefore, cannot question its correctness in holding him to be unentitled to recover the final payment of $500. He brought his action before the expiration of the thirty days, when it was provided that sum should become due, and before he had returned the drawings and specifications received by him, to the architect.
These were sufficient reasons for excluding his right to recover this sum of money. But he was, under the evidence as it has been accepted, and could justly be accepted by the court, entitled to recover so much of the sixth payment of $3,000 as had not previously been paid, and also, if the extra work should not be deducted from the $1,000, to recover the amount owing to him for the performance of that work. But the defendant was entitled, as the evidence was left in the case, to the additional sum of $120 for unexplained delay in the performance of the contract, and for $200 for the difference in the work by omitting the wash trays.
No other grounds appear for doubting the correctness of the judgment or interfering with it. The exceptions not considered are trivial, and require in their disposition no special attention. So much of the judgment as awards costs to the four defendants should be reversed. And so should the residue of the judgment in the case, and a new trial ordered, with costs to abide the event, unless within twenty days after notice of this decision, the plaintiff stipulates to deduct from the recovery the sum of $320. In cáse such stipulation be served then, the judgment so reduced should *237 be affirmed, without costs of the appeal to either party, and excluding the costs allowed to the four defendants.
Van Brunt, P. J., and Brady, J., concur.