HORACE BOTSFORD *vs.* THE NEW HAVEN, MIDDLETOWN AND
WILLIMANTIC RAILROAD COMPANY AND OTHERS.

The statute giving mechanics a lien upon buildings for work done and materials
furnished in their erection, applies to buildings of a railroad company.

A land owner agreed with a railroad company that he would give the land for
a depot and station upon the road, if the company would erect a building for
the purpose upon the land. The company agreed to do so, and employed the
petitioner to do the mason work thereon. He began work November 23d,
1870, and finished January 17th, 1871, and immediately thereafter filed a cer-
tificate of his lien. The company began to use the place as a station imme-
diately after making the agreement with the land owner and before the build-
ing was commenced, taking and delivering passengers and freight there, and
continued such use until the building was completed. No conveyance of the
land was ever made by the owner. The company had previously, in May
and June, 1869, made two mortgages of the entire franchise and property
of the road, the mortgages providing in express terms that they were also to
cover all lands and buildings that might afterwards be acquired by or belong
to the company. Held, upon a petition to foreclose the lien, that even if the
mortgages could legally embrace after acquired property, which the court did
not decide, yet the equitable title to the land in question did not vest in the
company until the condition on which they received the land was performed,
by the completion of the building so that it could be conveniently used for
the purpose for which it was erected, and that therefore the lien of the peti-
tioner took precedence of the mortgage incumbrance.

A motion for a new trial will not be entertained on a decree in equity. The
judgment will be reviewed only on proceedings in error.

BILL for the foreclosure of a builders' lien ; brought to the
Court of Common Pleas of Fairfield County. The respond-
ents were the New Haven, Middletown & Willimantic Rail-
road Company, William E. Raymond, treasurer of the state
of Connecticut, as trustee of a first mortgage of the property
and franchise of the railroad company, Charles Atwater,
Henry B. Harrison and Julius Hotchkiss, trustees of a second
mortgage of the same property, George H. Bishop and John
N. Camp, trustees of a third mortgage, and David Blakeslee,
the legal owner of the land upon which the building was
erected, on which the lien was claimed. Blakeslee consented
to a decree against him, but the other respondents filed an-
swers and made defence. The building in question was a

railroad station and depot. The case was heard before Brewster, J. The court found the following facts :—

Prior to the first day of May, 1869, the date of the first of the three mortgages mentioned, David Blakeslee was the owner in fee of the land on which the building was erected, and of the land over which the railroad track in front of and adjoining this land was laid and has since been continued, and he has never conveyed any of the land, or the right of way over the same, by deed or any other formal mode of conveyance, to the railroad company, and the land is still, so far as appears, the unincumbered land of Blakeslee, except so far as the same may be affected by the facts hereinafter found.

Some time prior to the date of the first mortgage the railroad company laid a track over the land of Blakeslee, adjoining the land on which the building was erected, and fenced in the track, as a part of the line of the railroad, and the company has ever since operated the railroad over the land as a part of the track of the road.

In the year 1870 the railroad company was desirous of locating a depot at or near the point in question, and caused notice to be given to the owners of the land and those in the immediate vicinity, that they would meet them at a day named, and hear them and be heard with regard to the location of the depot ; at which time sundry persons, among whom was Blakeslee, attended. At this interview Blakeslee offered to and agreed with the company, that in case they would locate the depot on the land in question they should have the same free of cost, and that the neighbors would grade the same. This proposition was accepted by the railroad company, and immediately thereafter they went into possession of the premises, using the land as a place of deposit for freight and passengers, prior to the construction of the building, and during the process of its construction, and since then it has been and now is used by the company as a depot and residence of the depot-master ; the depot being the only one for the villages of Northford and North Haven.

The depot in question was built twenty-six feet in width and fifty feet in length, the platform and four feet of the building being within the bounds of the lay-out of the railroad, and the rest on the land of Blakeslee.

The contract between Blakeslee and the railroad company has never been disclaimed by Blakeslee, and has been duly performed by the railroad company.

It did not appear upon the trial that any deed had been demanded or refused to be given by Blakeslee, nor did it appear why a deed had not been given, and the court found that the equitable title of the premises was in the railroad company an.1 passed by the mortgages to the several trustees before mentioned, if the mortgages are in law competent to convey the same, and if the use and occupation by the railroad company are evidence of an equitable title in the company.

The railroad company employed the petitioner, a mason, to build the chimneys and do the plastering for the depot building, and pursuant to such employment the petitioner on the 23d day of November, 1870, commenced to furnish materials and render services on the building in the erection of the same, and so continued until the 17th day of January, 1871, when he fully completed the work which he was employed to do. The amount of work done and material furnished by the petitioner came to $496.90, and on the 15th day of February, 1871, the petitioner made and swore to and filed in the office of the town clerk of North Haven, where the land lies, a certificate of lien, and the same was duly recorded on the land records of the town with deeds of land. The certificate correctly described the land .on which the building was located, and the amounts due, and the date when the petitioner commenced and ceased to render services and furnish materials for the building.

At the time the plaintiff commenced his work on the building, the railroad company had not begun to use or occupy the building or the land where it stood, nor had it any other possession of the same than by its employees in the construction of the building.

No prior lien or incumbrance existed on the building or

the land on which it stood when the petitioner commenced his services on the same, except such as existed by virtue of the first two mortgages mentioned.

Prior to obtaining the oral consent of Blakeslee to their occupation of the land for the building, the railroad company had executed and delivered two mortgages; one to the treasurer of the state of Connecticut, as trustee, to secure the payment of the bonds of the first issue to the amount of $3,000,000, dated the 1st day of May, 1869; and one to Charles Atwater, Henry B. Harrison, and Julius Hotchkiss, trustees, to secure the payment of bonds to the amount of $1,500,000, and dated the 5th day of June, 1869. On the 7th day of December, 1871, the railroad company made its third mortgage to O. V. Coffin and W. R. Galpin, trustees, to secure the payment of bonds to the amount of $2,000,-000. The respondents Bishop and Camp are the successors of Messrs. Coffin and Galpin as trustees of this mortgage. None of the bonds secured by the mortgages have been paid, and the mortgages are now in full force and unsatisfied.

The petitioner has never been paid for his labor and materials or any part of the same, and the sum of $496.90, with interest since the 17th day of January, 1870, is due to him, and he is without adequate remedy at law.

The words describing the property conveyed in each of the mortgages before mentioned, are as follows:

" All and singular the railroad of said party of the first part, from the city of New Haven to the village of Willimantic, in the state of Connecticut, as the same now is or may be hereafter located, constructed or improved, and all the roadway and lands that are or may be included in the location of said railroad, or acquired by said company for the purposes of said railroad, within the several points aforesaid, with all and singular the railways, rails, bridges, fences, station-houses, depots, shops, buildings, structures, tools, cars, engines, equipments, machinery, fuel, materials, privileges, appurtenances, appendages, and property, real and personal, which now belongs or may at any time here-

Botsford *v.* New Haven, Middletown & Willimantic R. R. Co.

after belong to said company and be used as a part of said railroad or be appurtenant thereto or necessary for the construction, operation or security thereof; and also all the property, rights and franchises of the said company, under its charter, and every part thereof, together with the tolls, income, issues and profits thereof, and all rights to receive the same, and everything necessary for the complete operation of said road."

The court granted the prayer of the petition as against the railroad company, and as against the trustees under the third mortgage, and against the respondent Blakeslee, who made no defense.

But the court held, on the facts, that the first and second mortgages attached to the land and the depot building, and were an incumbrance prior to the lien and incumbrance of the petitioner, and had a prior and superior equity; and therefore dismissed the petition as against the trustees of those mortgages.

The petitioner moved for a new trial for errors in the rulings of the court, and also filed a motion in error, assigning as error the holding that the mortgages of May 1st, and June 5th, 1869, constituted an incumbrance on the property in question, and as such took precedence of the lien of the petitioner.

*Wooster*, in support of the motions.

To give the mortgages in question the superior equity which is claimed for them, and which the Court of Common Pleas has determined that they legally have, the court must hold—1st, that the railroad company had the legal right in June, 1870, to mortgage property that it should acquire possession of in November, 1870, without any title other than such as possession would give; and 2d, that any property that should come to the possession of the railroad company subject to a lien could be held by the mortgagees free and clear of any lien.

1. The railroad company had no authority by its charter, nor by the statute laws of the state, to mortgage property it

did not then own. Charter, Priv. Acts of 1867; Rev. Statutes of 1866, p. 195, sec. 511. If under the common law it could make a mortgage different from the special authority given by the charter or by statute, then either possession must pass, or a record must be made in case of realty in the town where the land lies. No possession had ever been taken of this property prior to the attachment of the petitioner's lien, nor had any record of the mortgages ever been made in the town where the property claimed is situated. Nothing is better settled by authorities than that no personal property can pass by grant save that which belongs to the grantor at the time of the execution of the conveyance purporting to pass the title. *Head* v. *Goodwin*, 37 Maine, 181; *Pratt* v. *Chase*, 40 id., 272; *Jones* v. *Richardson*, 10 Met., 481. When a grant is made of goods that the grantor does not own at the time, and the grantor subsequently acquires title to such goods, it requires some new act on his part to transfer the title to such grantee. *Head* v. *Goodwin*, 37 Maine, 181.

2. The true construction of the mortgage deeds of May and June, 1869, read in the light of the facts of the case, does not make them cover the building or the land. The land is not included in the original location of the railroad, and has never been acquired by the railroad company. At most, the company was in possession only as tenant by sufferance. As a building on the land it never belonged to the company or was used as a part of the railroad, until after the petitioner's lien attached. The covenant of seizin of the railroad company, in the same deed, shows that property not then owned was not included. And the covenant to make " such further conveyance and assurance as shall from time to time be necessary " for the purpose of " subjecting thereto any and all property, real or personal, which may hereafter be acquired by said company and shall appertain to said railroad," shows that by the terms of the mortgage a new instrument of conveyance was to be made to convey subsequently acquired property.

3. The mortgage, if legal and adequate to convey subsequently acquired property, could convey nothing but the right

the railroad company acquired.  The law gave the petitioner a lien for his materials and labor from the moment he placed the first article on the land in question, and he never abandoned that lien.  If any right in his materials and labor passed to the railroad company, that right was subject to his lien.  The equity of the petitioner is superior to that of any mortgagee.  He gave all the value to the property.  The case of *Pierce* v. *Emery*, 32 N. Hamp., 483, and the case of *Havens* v. *Emery*, decided at the same term, (Redfield on Railways, 577, note,) shows that where the personal property placed upon a railroad was subject to a lien the mortgagees took it subject to the lien, unless the lien was abandoned. The facts do not show that the railroad company ever paid one dollar for land or building.  And it had no possession of either land or building prior to the commencement of the petitioner's services.

*S. L. Warner*, contra.

1. Our statute with regard to mechanics' liens does not apply to railroads or other enterprises of a public character. This is a public corporation, created by positive statute for public use and benefit and under public control.  The easement in the soil is taken by the public in the exercise of the right of *eminent domain.*  The railroad company is the trustee of the public.  The depot is created and regulated by public law and established to serve the public use.  The existence of a mechanics' lien, liable to be foreclosed by a private individual, and ejectment sustained, and the depot and that portion of the roadway on which it stands appropriated to private use, is incompatible with the public rights in the property, inconsistent with the objects of the corporation, and without warrant except in a technical rendering of the statute which must give way to the reason and spirit of the general policy of the law.  *Dunn* v. *North Missouri R. R. Co.*, 24 Misso., 493 ; *McAuley* v. *Western Vermont R. R. Co.*, 33 Verm., 311.

2. The ruling of the court that the two prior mortgages had precedence of the claimed lien was not error.  This

motion like a demurrer searches the whole record. The primary error was in the petitioner's favor, in the court holding the claimed lien of any validity.

3. The petitioner's claim is a technical one, and based on the supposition that the court cannot protect under the cover of these mortgages any interests or property other than the naked legal title. And on this point we say that the certificate of lien is conclusive against the petitioner. It counts on materials and labor furnished the railroad company, and the building is located on land "belonging to or supposed to belong to the railroad company." The certificate is not for a subcontractor; to be operative it must take effect on the land of the company.

4. The claim that Blakeslee appeared and consented to a default against him can have no effect; it was a fraud on the mortgagees and the railroad company. The court will protect those who have the equitable as against the legal title, and particularly when the assertion of the legal title is a fraud in equity.

5. The claim that this lien could operate on the legal title so as to exclude the interest of the railroad company, and prevent its passing to the mortgagees, has no foundation either in law or equity as applicable to railroads and their securities. The provisions in our statute making the payment of the damages for making and constructing a road over the land of the citizens a condition precedent, is for the protection of the individual and for the benefit of the land owner. He may waive it by parol and pass all necessary title. The law neither requires nor contemplates their title to be derived by deed. That is not necessary evidence of title. The assertion of the right of eminent domain is an assertion of the paramount title, and a title to which that of private individuals is subordinated. *McAuley* v. *Western Vermont R. R. Co.*, 33 Verm., 311. A man may dedicate the necessary easement for railway purposes, either for depot or roadway, by parol as well as by deed.

6. The finding of the court places the equitable title in the railroad company prior to the date of the inception of the

claimed lien. By that we infer that the transaction was such as that the railroad company had a right to the protection of the court, in all cases where the legal title should be subordinated to the equitable estate, and that we were entitled to the execution of all necessary papers to protect our equity. Blakeslee had sold or granted it to the company for a reasonable and valid consideration executed on the part of the company for the purposes of the grant, and the contract had been fully complied with by them ; they had entered into possession of the premises, had used the road for its ordinary purposes, and the place where the building stands for the deposit of freight thereon, prior to the time of the erection of the building. From the necessity of the case the possession of the company must have been prior to the work of the petitioner, since in the construction of the building the plastering would not precede the preparation of the building for it, and the title of the railroad thus became an equitable estate for a valid consideration vested in possession.

7. The charter of the railroad company gives it express authority to mortgage the franchises and all the property of the company, and the mortgages in terms convey the same. If the company, under its charter, could acquire an equitable interest, its charter and franchise authorize its conveyance. If the company's right or equity in the soil ante-dated the lien, the conveyance of the franchise necessarily would pass the equity. These suggestions are on the supposition that the company did not in fact acquire all the title to the land in question which might be necessary, and which we insist is not the case. By the terms of the charter the bonds of the three million issue were to issue cotemporaneously with the construction of the railroad and their amount was not at any one time to exceed one-half of the actual expense incurred in the construction of the railroad at the time of the issue. The mortgage was to secure the whole issue, and was prospective in its operation. The avails of these bonds cannot be considered other than the equitable funds out of which the land and roadway and depot were obtained ; they are the out-growth of these bonds, and in equity they have the priority.

8. The claim is sought to be sustained that this is after-acquired property, and not subject to assignment. In equity this claim is never recognized. With reference to railroad securities running over a long period of years, where the property is liable to be worn out and replaced, it follows, of necessity, that a mortgage like these must attach to after-acquired property. For the purpose of giving effect to the security, the law treats the party in possession as a trustee. And in our state such an assignment is good at law. *Holly* v. *Brown*, 14 Conn., 255 ; *Rowen* v. *Sharps' Rifle Manf. Co.*, 29 id., 282 ; *Mitchell* v. *Winslow*, 2 Story, 639.

9. These mortgages were executed cotemporaneously with the lay-out of the railroad. The statutes authorizing them contemplate the road as a product and outgrowth of the avails. It was not the lay-out or roadway that was mort-gaged. It was a railroad, with all its rolling stock, tools, equipments, choses in action, and rights, either at law or in equity. It was designed to take effect and operate not alone on all the property then held, but on all its possibilities, outgrowths, and accretions during the life of the security. The mortgages were designed to operate upon and cover the railroad as it should exist under the franchise of the corporation not only at the time of its inception, but when the mortgagees should take possession by virtue of the mortgages. *Willink* v. *Morris Canal & Banking Co.*, 3 Green. Ch., 377 ; 2 Redfiled on Railways, sec. 235 ; *Tapfield* v. *Hillman*, 7 Jurist, 771 ; *Pennock* v. *Coe*, 23 How., 117.

FOSTER, J. The principal question in this case is, whether the lien of the plaintiff shall attach to the described premises, prior or subsequent to two of the mortgages resting upon the same ; one, to secure the payment of bonds to the amount of $3,000,000, dated May 1, 1869 ; the other to secure an amount of $1,500,000, dated June 5, 1869.

The court below found the facts set forth in the petition true, so far as the claim for materials furnished and labor done was concerned, that the amount claimed was justly due and wholly unpaid, and that the lien was duly filed in all

respects conformably to the requirements of the statute. Judgment was rendered and a decree passed in favor of the plaintiff, but priority was given to the aforesaid mortgages, and the lien of the plaintiff made subject to those incumbrances. Whether or not there was error in that decree is the question now-raised on the motion in error. The motion for a new trial will not be considered, as we do not entertain that motion on a judgment or decree on a bill in equity.

We ought not perhaps to pass unnoticed the claim on the part of the defendants, that our statute regarding liens does not and can not apply to railroad corporations and other organizations of a public character.

The language of the statute is very broad and comprehensive ; apparently as applicable to corporations, public and private, as to individuals. The evils which the legislature intended to remedy arise as frequently in connection with those corporations, if we may judge from all past experience and observation, as in any cases whatever. Contractors with railroad companies for the erection and construction of depots, station and freight houses, &c., are not so absolutely certain of being paid for their labor and materials, as to make the protection of the lien law unnecessary ; and when it becomes necessary, we see no good reason why its protection should be withheld. If it be granted that the easement in the soil is taken for the railroad, in the exercise of the right of eminent domain, it by no means follows that the soil is so taken with an immunity from all liens and incumbrances upon it. Such an exercise of the sovereign power would be dishonest, and is effectually restrained by that salutary provision in our organic law, which forbids the taking of private property for public use without just compensation.

But this lien, it is said, is attempted to be imposed after the land was taken, or after the title of the corporation to it accrued. Whether this be so or not, we propose to inquire presently. Assuming for the time that it is so, what apology has the public for interposing an impenetrable shield between the property of this corporation and its honest creditors ? The company is said to be but the trustee of the public, the

representative of the public, as to this easement in the soil, and the depot thereon, which is a necessary adjunct of the railroad. So the foreclosure of a lien, and the possession by a private individual, will be incompatible with the public interest.

By what rule of law, by what principle of public policy, by what right, can the public claim to possess and enjoy a depot, station, or freight house, on a railroad, and exclude him who built it from enforcing his lien for the materials furnished and labor performed in its construction? Is it among the prerogatives of the sovereign power, in a free government, to do a manifest wrong?

There is certainly one case, possibly there may have been others, where the question we are considering would naturally have arisen in this court. It is the case of *Benedict et al.* v. *The Danbury & Norwalk Railroad Company*, 24 Conn., 320. That was a bill in equity brought to foreclose a mechanics' lien on the passenger station house of the defendants, situated at Danbury. The bill was dismissed, but not for any such reason as is now suggested. No allusion whatever was made to it by the counsel engaged in it on either side, though the defendants' counsel, as well as the plaintiff's, were gentlemen among the most eminent in the profession. In the carefully prepared and somewhat extended opinion of the court, given by Judge HINMAN, not an intimation is made but that the passenger station house of a railroad company was as much subject to the lien law as any building in any situation whatever.

There would seem to be no doubt but that the legislature, which certainly is that branch of the government that represents the sovereign power in taking property for public use, regard lands sequestered for railroad purposes as subject, equally with other lands, to the operation of the lien law for buildings erected on them. In the Acts of 1871, p. 727, is found an act entitled " An Act in addition to an Act relating to Liens." This act, as it will be.seen on examination, greatly extends the benefits of the lien law as against railroad companies. It secures a lien in favor of any person who has a

claim for materials furnished or services rendered by virtue of any contract, &c., in the construction, grading or building of every railroad, or any of its appurtenances, and the lien is to attach, not only to the real estate of the corporation, but to the right of way, material, equipment, rolling stock, and franchise.

The present bill, it is true, is not brought under this act. It rests, as we think it well may, on the general lien law. But with this act before us, greatly extending, as we have seen, the benefits of the lien law in favor of contractors as against railroad corporations, we surely can give no countenance to the claim that the lien law was not intended to apply to and cannot be legitimately enforced against those corporations. There are additional reasons, abundant and satisfactory, to some of which we have alluded, why we regard that claim as altogether untenable.

The question as to the position of this lien, whether prior or subsequent to the above mentioned mortgages, will now be considered.

The legal title to the land on which the building in question stands has never passed to the railroad company, but still remains in David Blakeslee, who was the owner when the road was laid out. The railroad company however have the equitable title, and may justly claim to have the legal title conveyed to them. How was this equitable title acquired, and when did it become vested ?

In the year 1870, the railroad company were desirous of establishing a depot at or near the point in question. The directors of the company, prior to this time, had conversations with the owner of land lying adjacent concerning the location of the depot upon his premises. Notice was at length given by the company, that they would meet the land owners in the vicinity, at a certain time and place, and hear them and be heard touching the location of the depot. At this meeting the said David Blakeslee offered to and agreed with the company, that in case they would establish the depot on the land described in the bill, they should have the same free of cost, and the neighbors would do the grading. This

proposition was accepted by the railroad company, and immediately after they went into possession of the land, using it as a place of deposit for freight and passengers, prior to the construction, and during the process of the construction, of the building.

The railroad company employed the plaintiff, a mason, to build the chimneys, and do the plastering for the building ; a structure fifty feet long and twenty-six feet wide. He commenced work, and the furnishing of materials, on the 23d of November, 1870, and continued until the 17th of January, 1871, when he fully completed the work he had been employed to do. On the 15th of February, 1871, he duly filed his lien for the amount, $496.90, which then was and still is justly his due.

Now when did the equitable title to these premises accrue to, and become vested in, the railroad company ?

The answer obviously is, when the railroad company had performed the conditions agreed by them to be performed, and which the owner of the land had agreed to accept, as an equivalent for the premises. That is to say, when they had erected the depot building on the site designated, and completed the same, at least so far forth that it could be conveniently used for the ordinary purposes of such a structure.

No vote of the board of directors, nor any other agreement by the company that they would erect a depot there, no stopping of trains to discharge and receive freight and passengers at that point, can be regarded as a compliance by the company with the terms exacted by Blakeslee as the consideration for conveying the land. He offered in effect, and the company understood him to offer, that if they would build a depot there, and use it as such, he would give them the land. It is true that the company took possession of the land immediately after the agreement was made, but it is stated explicit in the finding of facts that, "at the time the plaintiff commenced his work on the depot building, the railroad company had not commenced to use or occupy the building, or the land where it stood, nor had it any other possession of the same, than by its employees in the construction of the building."

Surely no court of equity would be justified in decreeing a specific performance of this contract as against Blakeslee, at the instance of the railroad company, until they showed a full and complete performance, on their part, by the erection and completion of this depot building. Then, and not till then, would their equitable title become perfect.

Now this was not earlier, in point of time, than when the plaintiff's work on the building was finished, and that was January 17th, 1871. The mortgages in question were given respectively, May 1st, and June 5th, 1869. They certainly conveyed no interest in these premises at that time, for it was a year or more before any negotiation even had been had concerning them. Waiving the question, as it is unnecessary to decide it, as to whether these deeds will embrace lands subsequently acquired, when acquired, and granting that they do, they take effect on these premises not earlier than the 17th of January, 1871. And they must take effect subject to such legal incumbrances as then existed. The lien of this plaintiff was clearly such an incumbrance, and it was error therefore in the court below to postpone this lien to those mortgages. It is entitled to the priority.

The very recent case of *Ryder* v. *Stryker*, 4 N. York Sup. Ct. Rep., 399, illustrates the care that courts take that the owner of land shall not be divested of his title, even when the land is taken for public use, until all the requirements of the law authorizing the taking have been strictly performed. That was an action brought to recover the value of certain wood and timber cut down upon and carried away from lands belonging to the defendant, which it was claimed had been taken for a public avenue. The plaintiff was the contractor for the construction of the avenue in question, under a contract with the commissioners, duly appointed for that purpose. By one of the specifications in the contract it was provided that the timber and the cord-wood within the limits of the road should belong to the contractor.

The defence was, that it had not been shown that the land had been taken at the time of the cutting of the wood. The act of the legislature, which authorized the proceeding, did

not specifically fix any time when the appropriation of the land should be deemed complete, or any moment when the title should be deemed to pass from the former owner and vest in the public. It was provided that the commissioners should lay out the proposed avenue in conformity with their general plan of streets and roads, to be laid out in the execution of their general duties ; and that the avenue should form a part of the plan, and be laid down and designated on the map thereof, to be filed by them. The plaintiff offered no evidence of any such map. It was proved that the commissioners had adopted the base line of the proposed avenue, (it was to be one hundred feet wide,) and directed the superintendent to prepare the final assessment in accordance with the same. The court held the act of appropriation to be incomplete ; and that the title of the private owner had not been divested, because it was not shown that the map had been filed. The order appealed from, denying a motion to set aside a non-suit and for a new trial, was therefore affirmed.

We think the owner of the premises, David Blakeslee, was not divested of his title, and that no equitable title accrued to the railroad company prior to January 17th, 1871, at which time the lien of the plaintiff attached, necessarily taking precedence of the mortgages in question.

In the decree of the court below there is therefore manifest error.

In this opinion the other judges concurred.