**EVEREST v. GAULT LUMBER CO. et al.**

No. 5539—Opinion Filed May 2, 1916.

Rehearing Denied Sept. 8, 1916.

(159 Pac. 910.)

1. **Vendor and Purchaser—Vendor's Lien— Reservation.**

One who, having a parol agreement with the owner for the conveyance of a tract of land, enters into a written contract with another for a sale and conveyance of said land, under which contract said other enters into possession of said land, has no such legal or equitable estate therein, and by such written contract conveys to the other no such legal or equitable estate, as will support a vendor's lien thereon.

2. **Mechanics' Liens—Creation—Title.**

One in open, undisputed possession of a tract of land, who afterwards receives a conveyance of the legal title thereto, may create mechanics' liens thereon as against his mortgagees and grantees.

3. **Mortgages—Validity—Priority.**

E., being a stockholder of L. Co., by parol agreement between the directors and some of the stockholders of said company agreed to take a lot in an addition owned by said company and build a house thereon, or sell the same to another and cause a house to be built thereon, such lot to be conveyed by L. Co. without other consideration. There-

after E. entered into a written contract with P., by terms of which P. obligated himself to tear down a house owned by him, remove the materials to the lot aforesaid, and erect thereon a two-story residence, and agreed to execute notes and mortgage for $3,000, payable to E., $2,000 to be the purchase price of said lot, and $1,000 to be lent P. by E., and E. thereby agreed to lend P. $1,000 to erect said house, and to cause said lot to be conveyed to him by good and sufficient warranty deed. P. entered into possession of said lot and commenced the erection of a dwelling house thereon. Thereafter, by oral agreement between E. and P., it was agreed that E. should lend P. $3,000 additional to construct said house. About two months after the building was commenced, E. caused a deed to said lot to P. from L. Co. to be delivered to P.; and at the same time P. and wife executed notes and mortgages to E. for $6,000. At the time building operations upon said house ceased there remained claims for material furnished and labor performed in the erection thereof for which mechanics' liens were filed. In an action to foreclose such mechanics' liens by the holders thereof, and by E. to foreclose the mortgages given by P. for the purchase price of said lot and the money lent by E., held, that the building of a house upon said lot constituted the consideration for which L. Co. conveyed the legal title to P.; that the contract between E. and P. delegated this obligation from E. to P., and constituted P. the agent of E. to construct said house; that, the erection of the house on said lot being necessary in order for E. to carry out his contract with P. to cause the same to be conveyed, E. took his mortgages for the price of the lot and the money lent by him subject to liens for material and labor incurred in the construction of said house, both before and after the execution and recording of said mortgages.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by the Gault Lumber Company, a corporation, against J. H. Everest and others, to foreclose a mechanic's lien. From a judgment in favor of plaintiff and other defendant lienholders, the defendant J. H. Everest brings error. Affirmed.

This action was commenced by the defendant in error the Gault Lumber Company against Austin F. Pettit and others to foreclose a mechanic's lien upon lot 10, block 33, Linwood Place addition to Oklahoma City. The plaintiff and all of the defendants, except Austin F. Pettit, Della Pettit, his wife, and J. H. Everest, claim mechanics' liens upon said real estate for materials furnished and labor performed in the erection of a dwelling house thereon by the defendant

Pettit. The defendant Everest filed an answer and cross-petition, alleging the execution and delivery to him by the Pettits of two mortgages upon said real estate—one securing the payment of a note for $2,500, payable to defendant Everest; the other securing the payment of seven notes, each for the sum of $500, payable to said defendant —and that said mortgages were prior to the mechanics' liens of plaintiff and the other defendants. He alleged breaches of the conditions of each of said mortgages, and prayed a foreclosure thereof. The cause was tried to the court, without the intervention of a jury, resulting in a judgment decreeing the plaintiff and other mechanics' lien defendants to be entitled to liens aggregating the sum of $2,045.16, and adjudging such liens to be superior to the mortgages of the defendant Everest. The court decreed a foreclosure of the mechanics' liens and the mortgages, and ordered a sale of said real estate to satisfy the amounts decreed to be due the plaintiff and the various defendants in the order of priority above named. From this decree the defendant Everest brings this proceeding in error.

The record discloses that in the year 1910 the defendant Everest was one of the stockholders of the Linwood Place Development Company, a corporation, owning one-eighth of the capital stock of said corporation. The Linwood Place Development Company was the owner and held the legal title to Linwood Place addition to Oklahoma City, including the parcel of land in controversy herein. Some time in the year 1910 it was orally agreed between the directors of the Linwood Place Development Company and 10 of the principal stockholders that each of said stockholders should select a lot in said addition and build a house thereon. The defendant Everest agreed to take the lot here in controversy, and either build thereon himself or sell the same to some one who would build. It seems from the record that these 10 stockholders were to receive these lots free, in consideration of their building thereon, or causing buildings to be erected. This agreement rested wholly in parol. Thereafter, and on October 14, 1910, the defendant Everest and the defendant Austin F. Pettit entered into an agreement in writing of which the following is a copy:

"Memorandum of Agreement.

"This agreement, made at Oklahoma City, Oklahoma, this 14th day of October, A. D. 1910, by and between Austin F. Pettit, party of the first part, and J. H. Everest, party of the second part, witnesseth:

"Party of the first part agrees to take down and to remove from block twenty-one (21) Edwards' addition to the town of Cleveland, Texas, the dwelling house and other buildings thereon, and to ship the same to Oklahoma City, preserving said material in as good shape as possible, and to erect same on lot ten (10), block thirty-three (33), Linwood Place addition to Oklahoma City, Oklahoma county, Oklahoma, putting a suitable stone or brick foundation under same of sufficient height, raising said house two stories, finishing said house inside and out, and painting the same with a good quality of paint, enlarging the front porch, the same when finished and completed to look like a new residence. All labor and material used in said house to be fully paid for by the first party.

"Party of the first part to execute to the party of the second part three notes for one thousand dollars ($1,000) each, due in one (1), two (2), and three (3) years from date, drawing eight per cent. (8 per cent.) interest, and mortgage securing the same upon the real estate above described, in the usual form providing for insurance, attorney's fees, etc.

"Party of the second part agrees to loan to the party of the first part, the sum of one thousand dollars ($1,000) to assist in the construction of said house on the lot aforesaid, and to cause said real estate to be conveyed to the first party by a good and sufficient warranty deed, the purchase price of said real estate to be two thousand dollars ($2,000.)

"In witness whereof, the parties hereto have set their hands at Oklahoma City, Oklahoma, the day and year first above written."

Pursuant to this contract Mr. Pettit tore down the building at Cleveland, Tex., and shipped the material to Oklahoma City, deposited the same upon the lot in controversy and in the month of January, 1911, commenced the work of erecting the building thereon, out of which this controversy arises. As the building progressed it became apparent that the sum of $1,000, which Mr. Everest had agreed to lend Mr. Pettit, would be insufficient to complete the building contemplated by the parties. Thereafter by parol agreement Mr. Everest agreed to advance Mr. Pettit $3,000 more to defray the cost of construction of the building, making a total of $4,000 to be lent to Mr. Pettit by Mr. Everest. As the building progressed, in February, 1911, Mr. Everest procured the execution of a deed by the Linwood Place Development Company to Mr. Pettit, conveying said parcel of land. This deed was delivered to Mr. Everest, and retained in his possession until March 6, 1911, at which time it was delivered to Mr. Pettit. At the same time

Mr. Pettit, joined by his wife, executed to Mr. Everest a first mortgage upon the real estate in question securing a note for $2,500, and a second mortgage securing seven notes, each for the sum of $500. These mortgages covered the $4.000 agreed to be lent by Mr. Everest. and the purchase price of said lot of $2.000, as agreed upon in the written contract herein set out. It seems that the deed and these mortgages were placed of record upon the same day.

Work continued upon the building until some time in the month of June, when it seems the building was nearly, although not quite, completed. All of the material furnished and labor performed in the construction of said building not having been paid for, the plaintiff and other defendants duly filed verified statements claiming mechanics' liens upon said eal estate for the amounts respectively due them. There seems to be no controversy as to the furnishing of the material, the performing of the work, and as to the amounts respectively due the parties to this litigation.

R. M. Campbell, for plaintiff in error.

Warren K. Synder and R. H. Towne, for defendants in error.

Opinion by RUMMONS, C. (after stating the facts as above). Counsel for defendant Everest makes several assignments of error in his brief, but they all seem to be embraced in his contention that the court erred in decreeing priority to the mechanics' lien claimants over the mortgages of the defendant Everest. It is contended by the defendant Everest that at the time of the commencement of the work, out of which the mechanics' lien claims arose, he held a vendor's lien upon the real estate in controversy to the amount of $2,000, the unpaid purchase price thereof, and the amount of money advanced by him under his contract with Mr. Pettit, and that, the mechanics' lien claimants being charged with notice of the fact that the legal title to this land was in the Linwood Place Development Company, and not in Mr. Pettit with whom they contracted, they were also chargeable with constructive notice of his rights and interests in the premises, which they could have ascertained by inquiry. He therefore contends that the mechanics' lien claimants furnished the material and performed the labor in the erection of said building with imputed notice of his prior claims thereon. He further contends that, as Mr. Pettit had, at best, only an equitable estate in the land, the mechanics' liens could only attach to such interest as he had therein, and would therefore be inferior and subsequent to the lien of his

mortgagees. On the other hand, it is contended by counsel for mechanics' lien claimants that they can only be charged with constructive notice of the rights of the Linwood Place Development Company, and that they had no actual notice of any facts which would put them on inquiry as to the rights of the defendant Everest. They further contend that, because the contract between Mr. Everest and Mr. Pettit obligated Mr. Pettit to construct a dwelling house as therein specified as a part of the consideration for the conveyance to him of the land in controversy, any claim of Mr. Everest for unpaid purchase money and advances is thereby postponed until the mechanics' lien claims are satisfied.

Both sides of this controversy have assisted the court with very able briefs, bristling with authorities, in support of their respective contentions. No case, however, has been cited by counsel for the respective parties in which the same state of facts existed as exists in the instant case. In this case, at the time the written contract between Mr. Everest and Mr. Pettit was entered into, Mr. Everest had no estate whatever in the real estate in controversy. The parol agreement among the stockholders gave him no legal or equitable interest in the lot to be selected by him; so that at the time the contract between him and Mr. Pettit was made he had no estate to transfer to Mr. Pettit, and Mr. Pettit received no estate by such contract to which a vendor's lien could attach.

It is true that, if Mr. Everest had taken possession of this lot and erected thereon a building in accordance with his parol agreement with the directors of the Development Company, he would have acquired an equitable estate in said lot, and would have been entitled to demand the conveyance of the legal title by the Development Company. In our view of the case the contract between Mr. Pettit and Mr. Everest simply in effect delegated to Mr. Pettit the obligation, which Mr. Everest had orally undertaken, to erect a dwelling house upon said lot, and in order for either Mr. Everest or Mr. Pettit to acquire an equitable estate in said lot it was necessary that the building be erected. So that it is apparent that neither Mr. Pettit nor Mr. Everest had any enforceable interest in said real estate prior to the delivery of the deed thereto on March 6, 1911. At that time the work upon the building had been in progress nearly two months, and most, if not all, of the mechanics' liens claimed herein had attached. So that when Everest, on the date of the execution of the mortgages to him, acquired an interest in said real estate, he took it subject to the

liens then attached; for Mr. Pettit being in possession, without objection on the part of the holder of legal title, and afterwards receiving conveyance of the legal title, the rights of the lien claimants became vested as soon as his possession was merged into the legal title. The conveyance was a recognition that Mr. Pettit had an equitable title under which the improvements were being made, and related back to the commencement of the work, so as to give Mr. Pettit an interest and estate in the land to which the mechanics' liens attached from the time of the commencement of the work. Chicago Lumber Co. v. Fretz, 51 Kan. 134, 32 Pac. 908.

In the view we take of the peculiar facts of this case, we do not deem it necessary to consider the question, ably argued in the briefs of the parties to this controversy, whether or not the contract which obligated Mr. Pettit as a part of the consideration of the conveyance of the lot to him to erect a dwelling house thereon postponed the lien of the vendor to the mechanics' liens for labor and material used in the erection of such dwelling. As we have said above, we do not consider that Mr. Everest ever had a vendor's lien upon this real estate; so that the cases cited involving that question are not pertinent to the issue here.

In the case of Botsford v. New Haven, Middletown & Willimantic R. Co., 41 Conn. 454, the Supreme Court of Connecticut had under consideration a case very similar to the one at bar. There one Blakeslee had agreed with the Railroad Company to give a tract of land to the company if they would locate a depot upon it. The company agreed to the terms, erected the depot, and employed Botsford to build the chimneys and plaster the building. He did the work, and filed his lien. The lien was given priority over prior mortgages executed by the Railroad Company, upon the theory that the work thus done was necessary to perfect the equitable title of the company to the land, being in fact a part of the purchase price. Until it was done the company had no claim to have the legal title conveyed to them, and so, when it came, that title could only come charged with the lien. The legal title, at the time the lien was sought to be foreclosed, still remained in Blakeslee; but he made no resistance to the foreclosure of the lien. In the instant case the Development Company has no interest in the controversy. They gave the lot free of charge for the purpose of having a building erected thereon. Mr. Everest could only put himself in a position to be able to carry out his contract with Mr. Pettit by having the building erected on said

lot. Until this was done he had no shadow of a claim to demand a conveyance from the Development Company. We therefore conclude that he authorized Mr. Pettit to act for him in erecting this building and thus constituted Mr. Pettit his agent. Eberle v. Drennan, 40 Okla. 59, 136 Pac. 162, 51 L. R. A. (N. S.) 68.

Having reached this conclusion, it makes no difference whether or not the various lien claims attached before or after the execution of the mortgages under which Mr. Everest claims. It was necessary, in order that he might reap the benefit of his arrangement with the Development Company, secure a conveyance, and collect the purchase price of the lot, that a building be not only commenced, but that it be completed; and having contracted to transfer his obligation to build to the shoulders of Mr. Pettit, he took his mortgages for the price of the lot and the money lent subject to the liens which might attach to the building in the course of construction.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.